## DUTTON *against* TRACY and another.

In the levy of an execution, a demand of the debtor personally, or at his usual place of abode, is an essential prerequisite.

If there be more debtors than one, the demand must be made upon all.

Where an officer, having in his hands an execution, issued on a judgment for the plaintiff, in an action of forcible entry and detainer, commanding him reseise the plaintiff of the land in question, and to collect of the defendants a certain sum, being costs of suit, entered on the land, and demanded possession thereof ; it was held, that this was not a beginning of execution, but a nugatory act, neither required nor authorized by law.

A writ of error, brought to review a judgment in forcible entry and detainer, is, generally, a *supersedeas* of process under that judgment.

*New-London,*
July,
1822.

Dutton
*v.*
Tracy.

Where a writ of error was allowed and signed before judgment rendered, but was legally served, and returned to a court having jurisdiction of the cause, and was eventually abated, on the plea of the defendants in error ; it was held to be a *supersedeas* of an execution, issued on such judgment between the allowance and the service.

Though a writ of error, brought obviously for the purpose of delay, or after a former one has been brought, and put an end to, by the plaintiff's own act, is no *supersedeas* of execution ; yet where a second writ of error was brought without an intention of producing delay, immediately after a former one on the same judgment, had been abated, on the plea of the defendants in error, it was held to be a *supersedeas.*

This was action of trespass, against *Elisha Tracy* and *Charles Thomas*, for taking three horses, the property of the plaintiff.

The cause was tried at *New-London*, *October* term, 1821, before *Peters*, J.

The defendants admitted the taking ; which they attempted to justify, by virtue of an execution issued on a judgment rendered, by a court of competent jurisdiction, on the 19th of *August*, 1819, in an action upon the statute against forcible entry and detainer, wherein *Tracy* was plaintiff, and *Dutton* and others were defendants. *Thomas* was the officer, who served the execution. By this precept, he was required to cause *Tracy* to become reseised, and put again into possession of the premises in question ; and to collect of *Dutton* and others the sum of 104 dollars, 97 cents, costs of suit, and his fees. His return was, in substance, as follows : " *New-London* county, *scil. Norwich, October,* 1st 1819. I, this day, by virtue of the within, and by direction of the within-named *Elisha Tracy*, repaired to the within described premises, and commenced the levy of the within, by entering thereon, and making demand of possession of the same ; and on the 16th of instant *October*, I took full possession thereof, by said *Tracy's* directions, and put the within named *Asa Dutton* and others out of possession of the premises, and put the said *Tracy* into the quiet and peaceable possession thereof, and delivered the same to said *Tracy* by twig and turf ; and on the 16th day of *October* instant, by virtue of the within execution, I made demand of the within named debtors, at the usual place of abode of the within named *Reuben Willoughby* [one of such debtors] of monies, in payment of the sums therein mentioned, together with my fees, and they neglected to pay the same. I also demanded, that they should shew unto me goods and chattels, whereon to levy said execution for the satisfaction of said

sums, and my fees, but they neglected to shew or tender any ; <span>*New-London* July, 1822.</span> and I thereupon, by direction of the within named *Tracy*, levied said execution upon three horses, the proper goods and estate of the said debtors, &c." To shew that such levy was <span>*Dutton v. Tracy*</span> unlawful, the plaintiff proved, that a writ of error to reverse said judgment, returnable to the superior court in *New-London* county, on the third *Tuesday* of *January*, 1820, allowed and signed by a judge of the superior court, on the 7th day of *October*, 1819, was, on that day, served, by the defendant *Thomas*, on the defendant *Tracy* ; and was, at the time of the acts charged in the declaration, in full force. This, the plaintiff claimed, was a *supersedeas* of the execution. The defendants, admitting the service and pendency of the writ of error, to shew that it was not a *supersedeas*, adduced evidence to prove, that on the 19th of *August*, 1819, a writ of error, bearing date that day, was served on the defendant *Tracy*, returnable to the superior court then next to be held in *New-London* county, to reverse said judgment ; to which the defendant in error pleaded in abatement, that at the time of the granting thereof, no judgment had been rendered in the action ; for that said court adjourned from the 18th of *August*, 1819, until 6 o'clock on the morning of the 19th of the same month, for the purpose of considering several questions, then pending before said court, and rendering judgment thereon ; and the plaintiff in error caused said writ of error to be made and transmitted to the Hon. *Jeremiah G. Brainard*, a judge of the superior court, then at *New-London*, and called him up in the night season, soon after midnight, and presented to him a writ of error, made upon a supposed state of the record, which might be made therein, as the record in the case ; and said judge, supposing such record to be complete, granted and signed said writ of error ; which was served on the defendant in error within ten minutes after said judgment was actually rendered. The defendants further shewed, that on a demurrer to such plea in abatement, judgment was rendered, on the 7th of *October*, 1819, that it was sufficient, and that the writ of error should abate and be dismissed.

It was admitted, that the facts stated in *Thomas's* return, and in said plea, were true ; that *Dutton* resided from the 19th of *August* to the 1st of *November*, 1819, at *New-London*, within *Thomas's* precincts as a deputy-sheriff ; but that no demand was made by him of *Dutton* personally, nor at his usual

place of abode, to satisfy the execution, or to exhibit property whereon it might be levied.

The plaintiff prayed the judge to instruct the jury, that said execution was superseded, by said writs of error; but if otherwise, that the levy of said execution was not legal, without a previous demand of *Dutton*, or at his usual place of abode, for payment of said execution, or for property whereon to levy it. The defendant prayed the judge to instruct the jury, that said execution was not superseded; and that no demand was requisite, other than that set forth in *Thomas's* return, which shewed such facts as amounted to a commencement of a levy on the 1st of *October*.

The judge instructed the jury as follows: " A writ of error, allowed and served, is a *supersedeas* or suspension of an execution. Two writs of error on this judgment appear to have been allowed and served; but the first having issued before the judgment was rendered, was void. The second having been issued and served, on the 7th of *October*, 1819, after the date of the judgment, was a *supersedeas* of the execution, and rendered the levy, on the 16th of *October*, void; unless prevented, by the acts of the defendant *Thomas*, on the 1st of *October*, as detailed in his return: by which it appears, that on that day, he repaired to the premises, *i. e.* the land in controversy, and demanded possession. But this was not an execution of the writ; and cannot be considered as the commencement of the levy thereof; which was begun on the 16th of *October*, 1819, when the second writ of error had been served, and was in force. With these remarks, you will take the case into consideration, and return a verdict for the plaintiff."

A verdict having been returned for the plaintiff accordingly, the defendants moved for a new trial, on the ground of a misdirection.

*Goddard*, in support of the motion, contended 1. That a writ of error, brought to reverse a judgment in forcible entry and detainer, is not, *in any case*, a *supersedeas*. If it were, it would defeat the object of the statute, which regards, not the title, but immediate possession, and would deprive the public of its benefits. In *England*, a writ of error is not a *supersedeas*, where any great inconvenience or unreasonable delay will ensue. *Wortley* v. *Holt*, 1 *Ventr.* 31. *Anon.*, 1 *Vent.* 266. Sir *Francis Duncombe's* case, 1 *Mod.* 285. *Spooner* &

al. v. *Garland &* al. 2 *Mau.* & *Selw.* 474. *Hawkins* v. *Snuggs,* <span>*New-London,*</span>
2 *Mau.* & *Selw.* 476. <span>July,
1822.</span>

2. That the first writ of error having abated, by reason of
an act done, and a delay occasioned, by the plaintiff in error, <span>*Dutton*<br>*v.*<br>*Tracy.*</span>
the second was not a *supersedeas.* Sir *Francis Duncombe's*
case, 1 *Mod.* 285. *Anon.* 1 *Vent.* 100. *Buller* v. *Lusitano*
*de Pina,* 2 *Stra.* 880. *Jenkins* v. *Bates,* 2 *Stra.* 1015. *Har-*
*top* v. *Holt, Holt* 271. *Birch* v. *Triste,* 8 *East* 412. Where a
writ of error abates, by motion, the defendant in error must
move for leave to take out execution; but where there is a
variance, he may have it without. *Giggeer's* case, 1 *Salk.*
264.

3. That the service of the execution was begun, on the 1st
of *October;* and the writ of error, allowed and served after
that time, could not be a *supersedeas.* The officer's entering
upon the land, and demanding possession, in this case, was
equivalent to a seizure of goods upon a *fi. fa. Phelps* v.
*Landon,* 2 *Day* 370.

4. That the demand made by the officer, was sufficient.
By the judgment, a joint debt was established; and a demand
upon one operated as a demand upon all. An act done by
one of several joint debtors—*e. g.* an acknowledgment of
a debt barred by the statute of limitations,—is binding up-
on all.

5. That if the officer has been guilty of any irregularity
in the service of the execution, the *party* is not be affected
by it.

*Cleaveland* and *Strong,* contra, contended, That the levy
of the execution was illegal: 1. Because the writ of error
then pending, was a *supersedeas.* A writ of error being *gen-*
*erally* a *supersedeas,* it is incumbent on the defendants to
bring their case within some established exception. 2 *Tidd's*
*Pract.* 1071. *Miller* v. *Newbald,* 1 *East,* 662.

First, they claim this to be an exception, on account of the
commencement of the levy on the 1st of *October.* But there
was *in fact,* no commencement of a levy. All that the officer
attempted, at that time, was, to enter upon the premises, and
*demand possession;* an act which the law did not require.
This was not a beginning to *take possession.* But if it was,
it would only authorize the perfecting of the possession; not
a levy for the costs. The execution still remained executa-

HARVARD LAW LIBRARY

*New-London,*
July,
1822.

Dutton
*v.*
Tracy

ble, and not excuted.   2 *Wms. Saund.* 101. *i. n. Perkins* v. *Woolaston,* 1 *Salk.* 322.

Secondly, the defendants claim this to be a second writ of error; and therefore, not a *supersedeas.* This was the first and only writ of error, *after judgment rendered.* But if it were otherwise; still a second writ of error has, in no case, been held to be a *supersedeas,* except where the plaintiff has voluntarily put an end to a previous writ of error, which he might have pursued, if he had elected so to do. *Buller* v. *Lusitano de Pina,* 2 *Stra.* 880. *Jenkins* v. *Bates,* 2 *Stra.* 1015. *Birch* v. *Triste,* 8 *East* 412. But in this case, the first writ of error was put an end to, not by any act of the plaintiff, but by the plea of the defendants. It ought to be remarked, too, that the principle on which a second writ of error has been held not to be a *supersedeas,* is, that the plaintiff thereby creates, or has the power of creating, delay. But here, the sin charged upon the plaintiff, is, that he started *too soon.*

2. The levy of the execution was illegal, because no demand was made of the plaintiff. The statute requires a demand of the debt, or sum due on the execution, to be made of the debtor personally, or at his usual place of abode, as an essential prerequisite to ulterior proceedings. *Stat.* 56. Whether a demand of one of several execution debtors may, or may not be, in any case, a demand of all; it is clear, that an officer cannot take the property of any debtor, without having previously made a demand of the same debtor.

HOSMER, Ch. J. From a reasonable construction of the motion for a new trial, it is apparent, that the trespass committed must be deemed the joint act of the defendants. *Thomas* acted under the specific direction of *Tracy ;* and the justification proceeds on the ground, that the execution was legally served. The levy of the execution against *Dutton* and others was unlawful; because no legal demand had been made upon it for payment; and because it was superseded.

The law explicitly requires, that the officer shall repair with the execution put into his hands for service, to the debtor's usual place of abode, and make demand of the debt, as the first step of his proceeding. The object of this enactment, was to give the debtor an opportunity of making payment in prevention of unnecessary cost; and if he could not do this, to confer on him the power of exposing such goods and chattels for raising the money requisite to satisfy the ex-

ecution, as should be least injurious to him. If there are
more debtors than one, the demand must be made on all.
This is a matter *stricti juris ;* and it is the privilege of each to
pay the debt, and prevent the levy on his property; or if a
levy is indispensible, to protect himself from unnecessary
damage. A demand of one joint debtor, does not authorize
the levy of an execution, on the property of another joint
debtor. This would be in contravention of the expression,
as well as of the manifest object, of the law. The demand
made on the land, to reseise which the execution issued, must
be laid out of the question. It was a nugatory act, neither
required, nor authorized, by any law, nor countenanced by
precedent. The demand which the law renders necessary,
is *personal ;* and before the property of *Dutton* could be lev-
ied on, must have been made of him, *at his usual abode.* If
the execution had not been superseded, the levy on *Dutton's*
horses constituted an unwarrantable trespass, and conclusive-
ly repels the attempted defence.

But, the execution was legally superseded, by both the writs
of error, brought by *Dutton* and others. The first of them, in
anticipation of the judgment, was voidable only, and not void.
The writ was signed and allowed by a judge of this court ;
was brought before a court having jurisdiction of the cause ;
and was legally served. It is not the insufficiency of the
plaintiff's declaration, or the falsity of every fact contained
in it, that annuls the *superedeas,* which the law implies ;
but if the writ duly emanates, and is addressed to a court hav-
ing cognizance of it, it is imperative on all executive officers.
*Duncombe's* case, 1 *Mod. Rep.* 285. *Laroche* v. *Wasbrough &*
al. 2 *Term Rep.* 737. The signature of the judge arrests his
proceedings ; and it is not at his option, whether he will, or
will not, obey a judicial mandate. He cannot enquire into
the sufficiency of the writ of error ; nor has he authority to
exercise any judgment concerning it; but it is his duty to yield
a prompt and unhesitating obedience. The contrary would
be the assumption of undelegated authority ; and the resist-
ance of legal process.

The only important question, however, arises under the
second writ of error, which was served anterior to the com-
mencement of the levy of the execution.

A writ of error, brought to review the judgment of a court
formed under the statute of forcible entry and detainer, is
attended with a supersession of proceeding below ; because

*New-London,
July,
1822.*

Dutton
v.
Tracy.

there exists an equal necessity of staying process under the judgment complained of, in prevention of injustice, as in other cases.

Had a demand on the execution been duly made on *Dutton*, it would have been a preliminary only to the commencement of the levy, and not the actual commencement; but no demand was made; and the service of a preceding writ of error, in the same case, did not necessarily annul the implication of *supersedeas.* by virtue of the latter. If a writ abates, by the plaintiff's own act, as where feme sole married after it was brought; (*Buller* v. *Lusitano De Pina,* 2 *Stra.* 885. *Jenkins* v. *Bates,* 2 *Stra.* 1015. *Birche* v. *Triste,* 8 *East* 412.) or if it be obviously for the purpose of delay; (*Entwistle &* al. v. *Shepherd &* al. 2 *Term Rep.* 78. *Kempley* v. *Macauley,* 4 *Term Rep.* 436. *Spooner &* al. v. *Gartland &* al. 2 *Mau. & Selw.* 474. *Hawkins* v. *Snuggs,* 2 *Mau. & Selw.* 476.) it is no *supersedeas.* But in the case before us, there is no ground for the assertion, derived from any source, that procrastination was the object of either writ. The first abated, not by the act of the plaintiff in error, but by the act of the court, procured by the defendant's plea in abatement. The second was instituted immediately, without the intervention of a day. Nor is any deduction to be made unfavorable to the plaintiff in error, from the promptitude with which the first writ of error was obtained. This proceeding was incorrect; but with a little candour it may be seen to have originated in a similar practice, not unusual in *Westminster-Hall.* There, it is usual to obtain the allowance of a writ of error, previous to the rendition of judgment; (*Gravall* v. *Stimpson,* 1 *Bos. & Pul.* 478.) and, as was said by *Buller,* J. (*Jaques* v. *Nixon,* 1 *Term Rep.* 280.) " it happens in almost all cases, that the writ of error is sued out before judgment is actually signed; because, otherwise, execution would issue instantly." To aid this proceeding, and prevent the rapid issuing of execution in frustration of a supposed legal remedy by writ of error, the court of *B. R.* has decided, that if a writ of error be sued out, and the plaintiff will not sign judgment till after the return of the writ, in order to avoid the effect of it, and then sues out execution, the court will set the execution aside. I have no doubt, that with a view to this practice, and in the hope that it would be acceptable here, the first writ of error was issued, and not with the intention of producing delay.

The other Judges were of the same opinion. PETERS, J., however, considered the first writ of error as a nullity; but this brought him to the same result.

New-London,<br>July,<br>1822.<br><br>Dutton<br>v.<br>Tracy.

New trial not to be granted.