Solomon *vs.* Peters.

WM. SOLOMON *et al*, plaintiffs in error, *vs.* RICHARD PETERS, defendant in error.

1. A demurrer to a bill in equity cannot be heard and determined in vacation, except by virtue of an order passed in term time.
2. The law requiring the officer making a levy on real estate to give the tenant in possession written notice of the levy, is directory to the officer ; and a failure to give such notice does not affect the title acquired by a *bona fide* purchaser of the property under such levy. If any injury be sustained by reason of such failure to give notice, it is a matter between the party injured and the officer making the levy and failing to give the notice.
3. The law presumes that every public officer performs his duty ; and all the purchaser, at sheriff's sale, has to look to, is the title of the defendant in execution, and the authority of the officer to sell.

Motion to dissolve injunction. Decided by Judge Collier. Fulton County. Chambers, September, 1867.

Peters' bill contained this statement of facts:

On the 3d day of April, 1862, Martin J. Hinton, bought of Edgefield Brown, (at that time living in Atlanta, but since residing Peters' knew not where,) a city lot in At-

lanta, No. 38, containing one acre, more or less, and paid $1,500.00 to Brown, and took his fee simple deed for it.

On the 26th day of October, 1866, Peters bought a part of this lot from Hinton and paid him for it $1,150.00.

Before these transactions, to-wit, on the 23d of April, 1859, John J. Thrasher obtained a judgment in Fulton Superior Court for $400.00 principal and $95.00 interest against Meredith Brown, (then of Fulton, but now of Pickens county, Georgia,) as principal, and said Edgefield Brown as security, on appeal. The *fi. fa.* was issued and transferred to William Solomon.

In February, 1867, Solomon had the *fi. fa.* levied on the whole of No. 38, as the property of Edgefield Brown, by B. N. Williford, sheriff of Fulton county, and it was advertised for sale in March, 1867. J. A. Long, Peters' tenant, had not told him that he had been notified by the sheriff of the levy, and so on sale-day Peters knew nothing about it. But Hinton's attorney filed an affidavit, under the "stay law," of 1866, and objected to the sale, because Solomon had not filed the affidavit required by that act. The sale did not take place; but the sheriff did not return the *fi. fa.* and affidavit to Court.

Wm. L. Hubbard, the deputy sheriff, without giving any notice to Peters, or his tenant, re-advertised the property for sale on the first Tuesday in April 1867, and then sold all of No. 38, to William Solomon, for $270.00.

The property is worth $2,500.00. Peters knew nothing of this till after the sale. He bought the property from Hinton without knowing there was any lien on it; Hinton owns no other property except the part of No. 38 not owned by Peters. Meredith Brown owns sufficient property to pay the judgment and Solomon applied to him for a waiver of his protection by the "stay law," but Meredith Brown would not give it, and then Solomon levied, as aforesaid.

The part of the lot owned by Hinton, at the time of the levy, was worth $1,200.00, and Solomon knew he owned it, and, before the sale, Solomon knew of the filing of said affidavit.

The position taken was, that Solomon's levy was illegal, and, if not, that he ought to sell Hinton's part first.

The prayer was for injunction against Solomon's being put into possession, and to set aside the sale as void.

The injunction was granted by Hiram Warner (then Judge of the Coweta Circuit) against Solomon and the sheriff and his deputy.

SOLOMON answered that on the 15th day of October, 1859, said *fi. fa.* and judgment were transferred to him for value, and he had held it ever since as transferree, and on the 29th January, 1867, had instructed Williford to levy on all of No. 38, as the property of Edgefield Brown, who then resided out of the State of Georgia; the levy was made, and J. A. Long, the person in possession, was notified in writing, but whether Peters knew it he did not know; he insisted that no law required Peters to be notified.

He exhibited the affidavit produced by Farrow on the day of sale. It was made by Farrow, as attorney for Hinton, and stated that Hinton had bought the property from Edgefield Brown and paid him for it, that Meredith Brown resided in the county and had property sufficient to pay the debt, and that the levy was illegal because Solomon had not made affidavit as required by the "stay-law" of 1866, and that Hinton, by reason of his poverty, could not give bond as required by law. All the facts were stated upon information and belief.

Solomon insisted this was not such an affidavit as was contemplated by the act, and stated that he made no traverse of it, and therefore the sheriff had nothing to return to the Court.

He, however, dismissed that levy on the 5th of March, 1867, and made affidavit that he was the *bona fide* transferree of the *fi. fa.*, and that Edgefield Brown resided out of the State, and caused the said lot to be again levied on by Hubbard the deputy sheriff. Of this no notice was given to any one except by the usual advertisement of the sheriff's sales. Hubbard sold it on the first Tuesday in April, 1867, according to law, and he bought it at $270.00, that being the highest bid. He admitted that the lot was worth more than $270.00, but denied that the circumstances charged by the

bill were the reason for its not bringing more, and denied that it was worth $2,500.00 or would bring that amount in market. He denied that that part of the lot still held by Hinton was worth $1,200.00, admitted that Meredith Brown had sufficient property to pay the judgment, but said he would not waive the benefits of the "stay-law," and was much involved, and there was no certainty of collecting out of Meredith's property without litigation, etc.

He insisted that nothing in the bill was a legal or equitable ground for relief, that if complainant was injured it was by his own *laches.*

WILLIFORD and HUBBARD also answered the bill. Their answer is but a re-hash of Solomon's, Hubbard adding that he gave Long verbal notice of the levy, and that nothing was said or done on the day of sale tending to make said lot bring less than its value.

The defendants moved to dismiss the bill for want of equity, and to dissolve the injunction, because (if there was equity in the bill) it was sworn off by the answers.

At the hearing, Peters amended his bill, averring that no notice (in writing or otherwise) of said second levy was given to Long or himself, that no deed had been made, no payment had been made, and nothing had been done except the bidding off of the property by Solomon; and Peters offered to pay then and there the amount due on his *fi. fa.,* upon condition of being subrogated to his rights.

The Judge would not entertain the motion to dismiss at Chambers, and refused to dissolve the injunction. His action in both of these particulars is assigned as error.

HILL & CANDLER for plaintiffs in error, said Solomon's title was good, citing Irwin's Rev. Code, secs. 2585, 2586, 3601, 3605, 3578, 3582; 27th Ga. R., 167; 11th do., 294; Code, secs. 2577, 2584; Irwin's R. C., 2579; Parsons on Contr., 1st p., 479, 3d p., 497; Addison on Con., p. 155, sec. 156; and that equity could not afford the relief prayed for, Dulin vs. Caldwell, 18th Ga. R., 117.

L. J. GLENN & SON, L. E. BLECKLEY, for defendants in error.

Solomon *vs.* Peters.

WALKER, J.

1. The Court very properly declined to hear in vacation the motion to dismiss the bill. Such a motion involved a decision of the merits of the bill, in other words a trial of the merits of the case as made by complainant, and should be heard only at term time; or in vacation by virture of an order passed in term time, authorizing the hearing in vacation.

2. The alleged equity of the bill as amended consists in the charge of a failure by the sheriff to give the notice of the levy as required by sec. 3596 Rev. Code. There is no charge that Solomon, the purchaser, had any notice of such failure, nor indeed that he has done anything to make him otherwise than a *bona fide* purchaser. Such being the case, the failure of the sheriff to notify the tenant cannot affect him.

3. It is sufficient for the purchaser that the sheriff had competent authority to sell, and did sell, and that the defendant in *fi fa.* had title to the property sold. The law requiring notice to be given, property advertised, etc., is directory to the officer. His neglect to observe these requirements may subject him to a suit for damages at the instance of any party injured thereby, but will not affect the title of a *bona fide* purchaser at his sale. The purchaser may presume that the sheriff has taken all the steps required by law to make the sale valid. He has the authority to sell, the law prescribes his duties, he swears to execute all processes placed in his hands according to law, and the *bona fide* purchaser may rely upon his fidelity in the performance of his duties. Brooks vs. Rooney, 11 Ga. R., 423. There being no charge of fraud against Solomon, he was entitled to the property purchased, and the Court should have dissolved the injunction.

Judgment reversed.