Rutherford *vs.* Crawford.

---

ANN E. RUTHERFORD, plaintiff in error, *vs.* WILLIAM L. CRAWFORD, defendant in error.

(TRIPPE, Judge, was providentially prevented from presiding in this case.)

1. Under the acts of 17th of March, 1866, pamphlet, 22, and 17th of March, 1866, pamphlet, 71, passed in pursuance of the constitution of 1865, the jurisdiction of the inferior court as a court of law over civil cases was abolished, and the cases upon all its dockets transferred to the county court, and, under these acts, it was competent for the clerk of the county court, on the 1st of January, 1868, to issue an execution on a legal judgment obtained in the inferior court, on which no execution had been issued.

2. An entry made by a deputy sheriff, or by his direction, in his presence, upon an execution, of a levy on a described lot of land, with intent then and there to devote the land to sale under the execution, but

Rutherford *vs.* Crawford.

by mistake not signed by him, is a good levy if the signature be at-tached during the official term of the deputy sheriff, or if the same be not signed during his term, the entry may be afterwards perfected, un-der an order of the court, or the mistake may be shown by evidence, on a trial in which the validity of the levy may be in question, but it is not competent for the deputy, after his term has expired, or whilst he is the deputy of a succeeding sheriff, to perfect said entry by signing. the same.

3. The proceedings of a court of record can only be shown by the rec-ords, unless they be lost or destroyed, and if, upon the production of the minutes of the inferior court, it appears that there is no record of the swearing and impanneling of a jury at a certain term of said court, a verdict entered upon the minutes at said term is, *prima facie*, void, as well as a judgment entered up thereon.

4. Whether such defect can be corrected by an entry *nunc pro tunc*, on motion in the proper court, as against a purchaser from the defendant, or against one who has subsequently obtained a lien, *quære?*

Inferior Court. County Court. Execution. Levy. Sheriff. Records. Minutes. Before Judge STROZER. Quitman Su-perior Court. November Term, 1873.

At the February term, 1865, of Quitman inferior court, William L. Crawford obtained a judgment against James Rutherford. On January 16th, 1868, the clerk of the county court issued execution bearing test in the name of the judge of said court, which, on October 24th, 1868, was levied upon certain lands as the property of the defendant. A claim was interposed by Ann E. Rutherford. Upon the trial of the issue thus formed, the claimant objected to the introduction of the aforesaid execution in evidence on the ground that it was illegally issued. The objection was overruled, and the de-fendant excepted.

The plaintiff then showed possession of the land by the de-fendant since the rendition of the judgment. The claimant proved by James Oliver that he was sheriff of said county at the date of said levy, but resigned in November, 1868; that Larkin Armstrong, whose name was appended to said levy, was his deputy; that he did not sign the same at the time it bears date; that said Armstrong moved from Clay to Quitman county in the early part of 1871; that witness brought him

back in November, 1871, for the express purpose of having him appointed deputy sheriff that he might then sign said levy; that David Johnston, the then sheriff, appointed said Armstrong his deputy, and that he acted as such during the November term of the superior court; that during said term he signed said levy; that upon the adjournment of the court, he returned to Clay county.

It further appeared that the levy was written by the plaintiff under the direction of said deputy sheriff, at the time it bears date, but was left unsigned.

The claimant submitted to the court the minutes of the inferior court for the February term, 1865, which failed to disclose that any jury had been impanneled and sworn at that term; but the verdict appeared, signed by N. T. Christian, foreman; also, the list of the jurors drawn for that term. The court refused to determine, from inspection, that no legal verdict had been rendered, but directed counsel for claimant to read said record to the jury for their consideration. To this ruling claimant excepted.

Much other testimony, immaterial to the issues here involved, was introduced.

The jury found the property subject. A motion for a new trial was made upon the following, amongst other grounds:

1st. Because the court erred in refusing to exclude the execution aforesaid.

2d. Because the court erred in refusing to determine, by inspection, the effect of the minutes of the inferior court upon the verdict aforesaid, and in submitting them to the jury.

3d. Because the court erred in charging the jury as follows: "It is incumbent upon the party attacking the record to show affirmatively that there was no jury impanneled and sworn. If the record simply omits to show the fact, the law will presume that the court did its duty, and that the jury was impanneled and sworn."

4th. Because the court erred in the following charge: "A levy may be a good levy, notwithstanding the sheriff did not

sign it.   If a levy is made and entered by the sheriff, or by his direction, it is a good levy if it is not signed."

5th.  Because the court erred in the following charge: "The law, upon abolishing the inferior court, made it the duty of the county court to take up and finish the unfinished business of the inferior court, and if the judgment in this case was rendered by the inferior court on February 15th, 1865, the execution issued thereon by the county court, February 16th, 1868, was correctly issued."

6th.  Because the court erred in charging the jury as follows : "If you believe that Armstrong was, in November, 1871, acting as deputy sheriff of the county, and whilst so acting, did affix his signature to said levy, it made said levy regular, and such amendment related back to the original date of the entry and made it valid from its beginning, provided he originally made said entry as his levy at the date it bears."

The motion was overruled and the claimant excepted upon each of the grounds aforesaid.

A. Hood ; B. S. Worrill, for plaintiff in error.

John T. Clarke; H. & I. L. Fielder, for defendant.

McCay, Judge.

1. By the act of 17th March, 1866, (acts of 1865–6, page 22,) all civil jurisdiction for the trial of matters involving private rights, was taken away from the inferior court by the repeal of those sections of the Code giving the jurisdiction. By another act, approved the same day, acts of 1865–6, page 71 : "All suits now on the docket of the inferior courts, are transferred to the county court."   The title to the act is : "To transfer all civil cases."   We think the language of this act, page 71, is broad enough to transfer, not only pending cases, but final judgments unperformed.   Until performed they are still fairly on the dockets, and litigation may still occur in relation to them.   As the act on page 22, abolishes the civil

jurisdiction of the inferior court, it is to be presumed that the legislature intended by the act, on page 71, to substitute the county court for it completely, and it is due to public justice to construe these acts liberally, so as to carry out the manifest purpose of the legislature. We are, therefore, of the opinion, that unperformed judgments were transferred to the county court and that the clerk had authority to issue the execution, and make it returnable to the county court.

2. A levy on land consists in the entry; that is all the seizure usual in this state. Indeed, by fair implication, such is the clear provision of law. Notice is to be given to the person in possession (Code, 3643,) and the sheriff, after the sale, is to put the purchaser in possession : Sec. 3651, Code. It is therefore of prime importance, that this entry shall be complete. It is not a mere return to the court of the officer's acts, as in the case of a levy upon personal property ; it is the levy itself. It should describe the property, with sufficient distinctness to enable the purchaser to know what he is buying and to enable the officer to put the buyer in possession, and as is expressly provided by section 3640, it must be signed by the officer making it. We have held that if it be left unsigned by mistake, that is, if the entry be made with intent then to make a levy and the description be complete, it is competent for the officer to complete it by correcting his failure. But *prima facie,* it is no levy. The entry may have been left unsigned with intent to do so. The intention to levy may be incomplete. Some further instruction or information may be sought, etc., and if this be so, the levy is not made. We do not think the facts, as presented by this record, make out the case of a complete levy. The *signature* by the officer after his term of office is ended, is nothing. It is not official. He is not under oath. His bondsmen would not be liable for malfeasance in the act. And he cannot, when in office, as the deputy of a new officer, complete his acts under his former principal. We think, however, the facts, the truth of the case might, under our law, which gives the court of law equitable jurisition, have been shown by evidence at the trial, and if the levy

was in fact made, with intent then to devote the property to sale, and the failure to sign at the time was a mere accident, a clerical misprision, that the defect would be cured.

3. We know of no way to prove the proceedings of a court of record but by its records. It appears from an inspection of the record that there was no jury at the term this judgment was had. If so, there was no authority to give a judgment. Under the law, as it then stood, a verdict was necessary to have a judgment upon. It is a gross 'and palpable irregularity. Not a mere defect in pleading, but as appears from the record, an exercise of authority not authorized by law. Without a jury there could be no verdict, and without a verdict the attorney of the plaintiff had no right to enter up a judgment.

4. Whether this can now be corrected by an order *nunc pro tunc*, we do not say. The superior court has the custody of the record, and on a proper case might make it speak the truth. How far such a correction would affect the claimant, is another question.

Judgment reversed.