## CONLEY *vs.* THORNTON.

1. When one brings an action for the conversion of property after conveying and delivering it to another, under whom the defendant claims, to defeat him on the ground that the conveyance was a fraud upon his creditors because intended to hinder or delay them, the evidence of fraudulent intent should be so clear and convincing as to exclude reasonable doubt. This defence is recognized for the sake of the public, not of the resisting party, and the public can have no interest in outlawing a plaintiff unless he is clearly within the rule that denies him a remedy. The evidence in this case was not irreconcilable with good faith, at least with grave doubt as to bad faith, though the conveyance was rashly and indiscreetly made.

2. When the defendant in trover claims his title and possession under a third person who acquired his title and possession from the plaintiff by fraud, and the real issue is whether the defendant participated in the fraud or had notice of it, the question whether the property did not really belong to a corporation of which the plaintiff was a member, but with which the defendant had no connection by privity or otherwise, is immaterial, and any errors committed by the court in ruling upon that branch of the case were harmless.

3. The grounds of the motion for a new trial not argued present no error on the surface, and none under the surface discoverable without the aid of counsel.

April 20, 1888.

Conversion. Fraud. Debtor and creditor. *Bona fides.* Title. New trial. Practice in Supreme Court. Before Judge MARSHALL J. CLARKE. Fulton superior court. September term, 1887.

Marcellus E. Thornton brought trover against John L. Conley for certain printing material, etc. of the Atlanta Post-Appeal newspaper, of which the plaintiff had been proprietor. Among the defences were the

general issue; that the title to the property was not in the plaintiff but in the Post-Appeal Publishing Co., a corporation for which a charter had been obtained by the plaintiff and others, and that he transferred the property to this corporation. Another plea was, that the plaintiff executed and delivered to A. H. Moore a bill of sale to the property for the purpose of hindering, delaying and defrauding plaintiff's creditors and delivered the property to Moore for that purpose, and therefore the courts would not aid him to recover it. It was further claimed by the defendant that he bought the property from Moore in good faith and without notice of any defect in Moore's title.

On the trial, the evidence was voluminous and conflicting, and it is not now material to be stated at length. It appeared that, eight days before the suit was brought, a number of papers relating to the property were executed, all on the same day. One was a lease from the plaintiff to A. H. Moore, providing that Moore should use the property for five years, paying plaintiff therefor, and with the right at any time during the running of the lease to buy the property for a certain sum. Another was a bill of sale from plaintiff conveying the property to Moore. Another was a paper signed by Moore, stating that he would deliver to plaintiff the bill of sale mentioned, together with the property, whenever the lease should for any reason expire. Then there were two written statements, signed by plaintiff, one to the effect that he had, for value received, sold the newspaper and material to Moore; and the other that A. L. Harris, agent for the purchasers of the Post-Appeal, would take possession at once. Four days later Moore made the bill of sale to defendant, conveying the property in consideration of a certain sum. As to the circumstances and purposes of the execution of these

papers, and as to whether the defendant had notice, etc., the parties were at issue.

A verdict for the plaintiff was rendered, and the defendant moved for a new trial on the following among other grounds :

(1) The court refused to grant a nonsuit, made on the grounds that the evidence showed that the title was in the *Post-Appeal* Publishing Co. and not in plaintiff, and that he made the bill of sale to Moore to hinder, delay and defraud his creditors.

(2) The verdict is contrary to law and the evidence.

(3) The court erred in allowing the plaintiff, over objection, to testify that it was not his intention to defraud or delay his creditors when he executed the bill of sale to Moore.

The motion was overruled, and the defendant excepted.

T. P. WESTMORELAND, HOPKINS & GLENN, A. A. MANNING and J. B. GOODWIN, for plaintiff in error.

ARNOLD & ARNOLD, FRANK A. ARNOLD, H. C. GLENN and J. H. SMITH, *contra*.

BLECKLEY, Chief Justice.

The court charged the jury: "If you believe from the evidence that it was the intention of the plaintiff, when he made the bill of sale, to delay or defraud his creditors, he could not by an action have recovered from Moore, and he cannot in this action recover from Conley." It is said that the verdict is contrary to this instruction, because the evidence showed that the intent of plaintiff was to defraud his creditors when he executed the bill of sale to Moore and turned over the property. This defence goes upon a sort of outlawry

of the plaintiff. It rests on the rule of law that the public tribunals will not aid parties who are *in pari delicto*, to change the circumstances under which they have placed themselves by their wicked dealings. To put an absolute interdict on the remedies of a citizen, the case ought to be clear—free from all reasonable doubt. The defence is not recognized for the sake of the person who sets it up, but for the sake of the public; and of course the public do not want to defeat the action otherwise meritorious, unless the plaintiff is clearly within the rule that denies remedy. We find that, though the bill of sale was rashly and indiscreetly made, according to the evidence in this case, the jury could very well have doubted whether there was an intention on the part of Thornton to delay or defraud his creditors, not only from what he testified directly as to his intention, but from the circumstances that he' disclosed, namely, that he had made arrangements in his contract with Moore to pay certain of his creditors, and as to the one who had a pending suit, the claim was for no great amount, the amount was disputed, and he had made arrangements to pay any recovery that might be had in that case in the event there was a recovery; so we think the imputed fraudulent intent was not free enough from doubt to constitute an absolute bar to this action. The jury were warranted in finding that there was no such intention, or at all events, that there was no such evidence of the intention as to make the matter free enough from doubt to deny the plaintiff his remedy.

2. The only other position argued before us was, that the evidence showed that the title to this property was in a corporation, and not in Thornton, the plaintiff. It is alleged that divers errors were committed by the court in ruling and charging the jury upon that branch of the case. It was an immaterial branch of the case,

because, whether Thornton had the title or not, he exercised dominion over the title and the possession, and it was under his alleged disposition of title and possession that the defendant in this action claimed. He claimed under Thornton through Moore, and whether his title was fraudulent as against Thornton was the real matter in controversy. It would be no defence to him that the corporation of which Thornton was a member was the real owner of the property. Thornton assumed to dispose of the property and Conley held it under him; it is not for Conley, who derived his possession from Thornton through Moore, to set up an adverse title to Thornton, in a corporation under which Conley does not claim. He is not connected with that corporation by privity or otherwise; he has not acquired its title, if it had a title; and so we treat that branch of the case as immaterial to the merits of the dispute.

3. There were several other grounds embraced in the motion for a new trial; and we have looked at them. They do not present any error upon the surface, and if there be error under the surface, we have not had the assistance of counsel to dig it up and point it out to us; and so on the whole case, we affirm the judgment refusing to grant a new trial.

Judgment affirmed.