### BIRD *v.* BURGSTEINER for use.

1. An advertisement of sale of land by a sheriff, which is made once in each calendar week for four weeks, is, since the act of 1891 (Acts 1890-91, vol. 1, p. 241), rendering legal certain notices, etc., good as to time, without reference to the number of days which may elapse between the day of the first insertion and the day of sale.
2. A levy on land is void for uncertainty which fails to describe the land levied upon with such precision as to inform a purchaser what he is buying, and enable the officer selling to place the purchaser in possession.

Argued February 19,—Decided March 8, 1897.

Affidavit of illegality. Before Judge Falligant. Effingham superior court. May term, 1896.

Ejectment was brought upon the demise of James Burgsteiner to recover "All that tract or parcel of land situate lying and being in the village of Whitesville in the county of Effingham and State aforesaid, containing two acres more or less, and running from a stake on the west side of the Central Railroad down to Corbet's ditch, and thence down the ditch to Corbet's line, and thence taking up said line to the Central Railroad in an easterly direction; said two acres being a part of a five acre lot conveyed to Mary M. Wyly on the 18th of June, 1862." Afterwards H. B. Strange, averring himself to be the attorney of record of plaintiff, amended the declaration and alleged, that by the terms of a contract entered into between him and Burgsteiner, plaintiff's lessor, said contract, together with his claim of lien, being recorded in a certain book mentioned, he was to have and retain, as his fee for services rendered in and about the prosecution of the case, one half of the net proceeds of any

recovery that might be made in the case. In compliance with the terms of said contract he filed the action, and the same had been pending until this date. After filing it and after the defendant (W. J. Bird) had full and complete knowledge of his legal rights as the attorney of record for plaintiff, Bird, contriving and fraudulently intending to deceive and cheat Strange, procured Burgsteiner to accept $100 or other large sum in full settlement of any right he might have to recover the premises mentioned in the action. Burgsteiner did accept from Bird said sum, and from then until now has failed to appear in the prosecution of the cause; but as petitioner (Strange) shows he is entitled by law to prosecute the case to its final determination, to the end that he may recover his fee contracted to be paid for services rendered and to be rendered therein; and inasmuch as Bird, without his knowledge or consent, has so settled with Burgsteiner but has failed and refused to pay to petitioner his fee as aforesaid to be recovered in the case, petitioner prays to be permitted to prosecute the case for his fee, and that the same proceed to final verdict and judgment for his use, and that he be permitted to show the value of the premises and to recover one half thereof as his fee in the case, and that by the final verdict and judgment the premises in dispute be declared to be subject to the lien of such verdict and judgment until the same shall be fully satisfied. The jury found "a verdict for the plaintiff for the use of H. B. Strange for the sum of $100; that this verdict be a lien upon the premises in dispute owned by the defendant W. J. Bird." Upon this verdict a judgment was entered, that the plaintiff recover of defendant for the use of H. B. Strange $100, and that the verdict be a lien upon the premises in dispute owned by defendant Bird for said sum of $100, and that plaintiff for the use of Strange recover $15.75 costs of suit. Execution issued against the goods etc. of Bird, for $100 principal, and future interest, and $51.60 costs, which "John Doe ex dem. James A. Burgsteiner for the use of

H. B. Strange lately" recovered. On this fi. fa. was entered the bill of costs, included in which was "witnesses as per affidavits filed: David Speir eleven days at seventy-five cents, William Speir ten days at seventy-five cents, Bill Cope twelve days at seventy-five cents, T. J. Gracen thirteen days at seventy-five cents"; said witness fees amounting to $34.50. On January 7, 1896, the fi. fa. was levied upon that lot of land in the 10th district G. M. of Effingham county "in the village of Guyton, being an undivided one half-interest in two acres more or less of land on which W. J. Bird heretofore resided, said two acres being bounded as follows: beginning at a stake on the west side of the Central Railroad and running down to Corbet's ditch, thence down said ditch to Corbet's line, thence up said line to said Central Railroad in an easterly direction, said half hereby levied on being the half on which the residence of said W. J. Bird now stands, containing one acre more or less." Bird interposed an affidavit of illegality. A general demurrer thereto was sustained, and Bird excepted. The illegality was upon the following grounds: (1) The judgment on which the fi. fa. was founded was for money alone, when the suit in which it was rendered was for land alone. (2) The judgment does not follow the verdict, in that the verdict was in favor of H. B. Strange and the judgment is in favor of James A. Burgsteiner for the use of H. B. Strange. (3) The fi. fa. does not follow the judgment, in that it is in favor of John Doe ex dem. Burgsteiner for use of H. B. Strange. (4) The fi. fa. was not levied until January 7, 1896, less than four weeks prior to the first Tuesday in February, yet the sheriff has advertised the property for sale under the levy on the first Tuesday in February. (5) The sheriff did not advertise the property for sale under the levy until the 10th day of January, 1896, which was less than four weeks from the first Tuesday in February, the day on which it is so advertised for sale. (6) The costs taxed by the clerk, as appears from the bill of costs entered

on the fi. fa., for witness fees, are illegal and without author-
ity of law. (7) The levy is too uncertain and insufficient,
in that it states the.property levied on as being an undivided
one half-interest in the two acres more or less mentioned in
the levy, and further on states that the levy is upon a specific
half of said property. Neither metes, bounds, dimensions
nor shape is given of the specific half; so that its identity is
not sufficiently set out in the levy. (8) The property sought
to be levied on was conveyed by defendant to H. G. Wright
by deed to secure debt under section 1969 of the Code, on
February 4, 1892, which debt remains unsatisfied, and the
title to the property remains in said Wright and not in affi-
ant, and the attempted levy is for this reason void.

*A. C. Wright*, for plaintiff in error.
*J. G. & D. H. Clark*, contra.

LITTLE, Justice.

The official report shows the facts.

1. Counsel for plaintiff in error, by his brief filed here,
withdrew from our consideration all of the various grounds
contained in the affidavit of illegality, except the 4th, 5th,
and 7th; and our decision will be confined to a review of the
questions raised by those grounds, and whether the court be-
low erred in sustaining a general demurrer thereto. There
were eight specific grounds set out in the affidavit, in each
of which it was claimed the execution had issued or was pro-
ceeding illegally; and we are not to be understood, in fail-
ing to give them notice here, as passing in favor of the
questions raised; we have simply confined consideration to
those only which were not abandoned on the argument here.

The 4th and 5th grounds of the affidavit, which appear in
the statement of the case, raise the question of the time
necessary, under the law, for notice by advertisement of a
sale of land by the sheriff, and allege that the sheriff is pro-
ceeding to sell under an advertisement of less than four
weeks. To determine this question, it will not be necessary

to refer specifically to legislation on the subject prior to the act of 1891. Formerly thirty days advertisement was required; and later advertisements of such sales made once a week for four weeks met the requirements of the statute. But by an act approved October 21st, 1891 (Acts 1890-91, p. 241), which is a very general and comprehensive enactment on the subject, previous laws were changed. It is provided in this act that "it shall be sufficient and legal to publish the same once a week for four weeks (that is, one insertion each week for each of the four weeks) immediately preceding the term or day when the order is to be granted or the sale is to take place; and the number of days between the date of the first publication and the term or day when the order is to be granted or the sale to take place, whether more or less than thirty days, shall not in any manner invalidate or render irregular the said notice, citation, advertisement, order or sale." It is seldom that more emphatic language is found in a legislative enactment, and it is rarely the case that one act seeks, by the multitude of terms used, to prevent any misconception of the legislative will. In the case of *Boyd* v. *McFarlin*, 58 *Ga.* 208, this court, in construing section 3647 of the Code of 1873 (Civil Code, §5457), which required notice of sheriff's sales of land to be published weekly for four weeks, held, that the statute was not met by publication for a shorter period of time than twenty-eight days; in other words, that when the statute fixed the period at once a week for four weeks, it meant to use the term "week" as a period of time consisting of seven days, and that when there should be a publication weekly for four weeks, it meant once in each seven days, so as to give notice of such sales for twenty-eight days before the sale should take place. This was the law, as construed, at the time the act of 1891 was passed, and that act was intended to change existing law, so that if a notice of such sale should be made once a week for four weeks, such advertisement would be sufficient, without reference to the number of days which

might so elapse. In ascertaining the legislative intent as expressed by the act, we are bound to conclude also that the week of seven days was not intended to be taken as the period in which one publication only of the notice must necessarily be made, because such was the statute as interpreted by the court at the time of the passage of the act; hence the act, in referring to the publication to be made once a week for four weeks, means a calendar week, and if notice shall be made on any day of a calendar week, that shall be counted as a publication for that week; and this construction would allow a notice to be made on a day within the week when the sale is to take place, because the act expressly excludes computation of days.

Such is our construction of the act of 1891. It is neither our province nor purpose to criticise the policy of this legislation. Were we to do so, I should be disposed to doubt the wisdom of sanctioning a sale of lands taken under execution on so short a notice. At best, comparatively few persons are reached by the published notices appearing once in a week. The object of the advertisement is to secure as many bidders for the property as possible; and any legislation which tends to restrict knowledge of the fact, time and place of sale, might, not without reason, be regarded as working injustice, not only to the creditor, but the debtor as well.

In this case, the advertisement of the sale of the land by the sheriff was made first on January 10th, the second notice would appear on January 17th, the third on January 24th, and the fourth on January 31st, while the sale would take place on the 4th day of February—just 26 days after the advertisement first appeared. Nevertheless, as, under the act of 1891, the days which elapse between the two periods are not to be computed, and the advertisement would appear once in each of the four calendar weeks, we are constrained to hold that such advertisement meets the requirements of that act.

2. The law (Civil Code, §5421) declares that the levy "shall plainly describe the property levied on and the amount of the interest of the defendant therein." In one of the early cases before this court, *Whatley* v. *Newsom*, 10 *Ga.* 74, where title in an action of ejectment rested on the sufficiency of the description of the property contained in .a sheriff's deed (which must follow the levy), Judge Lumpkin, holding the deed void for uncertainty of description, declares the rule to be that "the thing sold must in all cases be specified with so much precision as from the description it can be reduced to certainty"; and quotes approvingly from an opinion of Chancellor Kent: "No person attending a :sheriff's sale can know what price to bid or how to regulate his judgment, if there be no specific or certain designation of the property. To tolerate such judicial sales would be a mockery of justice; the sheriff cannot sell any land on execution but such as the creditor can enable him to describe with reasonable certainty so that the people whom the law invites to such auctions may be able to know where and what is the property they are about to purchase." Following this rule, this court, in *Rutherford* v. *Crawford*, 53 *Ga.* 138, held that a levy on land consists in the entry, and the sheriff after the sale is to put the purchaser in possession, .and "it is therefore of prime importance that this entry shall be complete." It should describe the property with sufficient distinctness to enable the purchaser to know what he is buying and to enable the officer to put the buyer in possession. See also *Brinson* v. *Lassiter*, 81 *Ga.* 42. It has also been held that a sale and conveyance of land under a levy on an undefined interest, is void for uncertainty. *Williams* v. *Baynes*, 84 *Ga.* 116.

The levy in the case under consideration is made on a specified lot of land as the property of the defendant. The levy recites that it contains one acre and is an undivided half-interest in two acres. It will be noted that it is not an undivided half-interest in the lot which is levied on, but the

whole lot containing one acre is levied on as an undivided half-interest in two acres. Tested by the rules laid down, we are unable to say that the levy attaches to an undivided half-interest in two acres, because such an interest would extend to every part of the whole which is not levied on; nor can we say that the levy attaches to a particular lot, because while a lot containing one acre is specified, that particular part of the whole is described as an *undivided* half-interest in two acres. The levy is very uncertain. A purchaser could not tell what he was buying, and the sheriff would find some difficulty at least to determine, under the description given, what particular land, as well as the interest in it, he should put into the possession of a purchaser under a sale. Any conveyance made by the sheriff, containing the description set out in the levy, would be void for uncertainty and pass no title. This defect in the description of the land appearing in the levy can, when the sale is advertised, be taken advantage of by affidavit of illegality, 58 *Ga.* supra. The court therefore erred in sustaining a demurrer to this ground of the affidavit of illegality.

*Judgment reversed. All the Justices concurring.*