## CONLEY *et al. v.* REDWINE *et al.*

1. Though notice of a sheriff's sale be published once a week for four successive weeks before the day of sale, the advertisement will not meet the requirements of the law if the last publication be made in the same week as that in which the sale is to be had. Where four publications only are made, each must be in a separate week, and each must precede in point of time the week embracing the day of sale. The decision of this court in *Bird* v. *Burgsteiner*, 100 *Ga.* 486, construed in the light of its facts, does not conflict with what is here laid down, and the language in the opinion which seems to indicate the contrary was obiter.

2. Where, however, the purchaser at a sheriff's sale has no knowledge or notice of insufficiency in the sheriff's advertisement, he will be protected, although he be the plaintiff in execution. It does not in this case appear that the purchasers had such notice.

3. A sheriff's sale under a dormant execution is void, and, being a mere nullity, presents no obstacle to a sale of the same property on the same day under a valid execution.

4. There was no error in explaining to the jury the history and nature of the case as it appeared from the uncontradicted evidence and the pleadings, the more especially when the judge went no further than was essential to a clear understanding of the issues involved at the trial.

5. Contiguous parcels of land forming one entire tract may be levied on and sold as one tract, although the same be composed of fractional parts of different land lots.

6. While the rights of one entitled to the balance of the proceeds of a sheriff's sale after the satisfaction of the lien under which the sale took place should not be prejudiced by the misconduct of a stranger in deterring bidders, yet if it appeared that the person first referred to really acquiesced in such conduct and sought to prevent the property from bringing its full value, such person would not, because of the mere misconduct of the stranger, have the right to invalidate or set aside the sale.

7. The mere fact that a principal and agent bid against each other at a sheriff's sale, though their purpose in so doing was to deter other bidders and get the property at less than its value, would not, in the absence of some proof that the price was really affected by such conduct, be cause for setting the sale aside.

8. There is no error in requiring counsel to confine his argument to the facts and issues involved in the case.

9. The fact that a sheriff's sale embraced a parcel of land belonging to a third person is not a ground for setting the sale aside at the instance of the defendant in execution or one entitled to the balance of the proceeds of the sale after the execution was satisfied.

10. Though a tract of land had in fact been laid off into streets and town lots, yet where there were no visible marks on the surface of the tract to indicate the metes and bounds of the lots, and the only thing in the nature of a street appearing thereon was a recognized public road of the county, a levy upon and sale of the entire tract as one parcel was proper and legal.

11. An entry of levy embracing a description of the property levied on, which of itself is insufficient to locate the same, and referring for a more accurate description to a public record, is sufficient as to matter of description if the property is accurately described in such public record.

12. The charge of the court was full, fair, and explicit. The evidence amply warranted the verdict; and no error was committed during the progress of the trial which would require a reversal of the judgment refusing to grant a new trial.

Argued December 19, 1899. — Decided January 29, 1900.

Equitable petition.    Before Judge Lumpkin.    Fulton superior court.    March term, 1899.

*A. A. Manning* and *T. P. Westmoreland,* for plaintiffs in error. *Arnold & Arnold* and *Rosser & Carter,* contra.

Cobb, J.    This case brings under review another phase of a controversy which has been before this court in various shapes and at several different times.    See *Conley* v. *Thornton,* 81 *Ga.* 154; *Conley* v. *State,* 83 *Ga.* 496; *Conley* v. *State,* 85 *Ga.* 348; *Conley* v. *Maher,* 93 *Ga.* 781; *Conley* v. *Arnold,* 93 *Ga.* 823; *Conley* v. *Buck,* 100 *Ga.* 187; *Conley* v. *Buck,* 102 *Ga.* 752; *Conley* v. *Redwine,* 103 *Ga.* 569.    The history of the litigation in all of its phases leading up to the present controversy will be found in the cases cited above, and it is unnecessary to repeat it here.    The pleadings in the present case brought before the court two sheriff's sales of the same property.    The first was had under an execution in favor of D. P. Hill, as executor of Wade Hill, against John L. Conley, and the second was under an execution in favor of Thornton, then controlled by Buck, against John L. Conley.    Redwine, the original plaintiff and the purchaser at the second sale, brought his petition praying that the first sale be set aside.    The wife of John L. Conley, who claimed the property under a deed from her husband, was a defendant in this proceeding, and she by answer in the nature of a cross-bill set up that she was the purchaser under the first sale and prayed that the same be confirmed and that the sale to Redwine be set aside.    At the trial it was conceded that the first sale was void, and therefore the only question for decision was whether the second sale was valid.    The trial resulted in a verdict in favor of Redwine, and Mrs. Conley's motion for a new trial being overruled, she excepted.

1.    It was insisted that the sheriff's sale at which Redwine became the purchaser was void, because the sale was not advertised according to law.    The advertisement was published four times in the newspaper, to wit, on Monday, March 15, Monday, March 22, Monday, March 29, and Monday, April 5.    The sale was had on Tuesday, April 6.    Section 5457 of the Civil Code provides that notices of all sales by the sheriff shall be published weekly for four weeks; and section 5458, which embodies an act passed in 1891, provides that it shall be sufficient and legal to publish the notice "once a week for four weeks (that is, one insertion each week for each of the four weeks) immediately preceding the  .  .  day when the  .  .  sale is to take place;

and the number of days between the date of the first publication, and the . . day when the . . sale [is] to take place, whether more or less than thirty days, shall not in any manner invalidate or render irregular the . . advertisement or order of sale." Prior to the passage of the act of 1891, when the law required sheriff's sales to be advertised for four weeks, it was held that the word "week" meant a period of time consisting of seven days, and that to comply with the law it was necessary that twenty-eight days should elapse between the date of the first advertisement and the date of the sale; and that this lapse of time was sufficient whether four complete calendar weeks were embraced therein or not. *Boyd* v. *McFarlin*, 58 *Ga.* 208 ; *Bird* v. *Burgsteiner*, 100 *Ga.* 486. As was said by Mr. Justice Little in the opinion in the case last cited, "This was the law, as construed, at the time the act of 1891 was passed, and that act was intended to change existing law, so that if a notice of such sale should be made once a week for four weeks, such advertisement would be sufficient, without reference to the number of days which might so elapse. In ascertaining the legislative intent as expressed by the act, we are bound to conclude also that the week of seven days was not intended to be taken as the period in which one publication only of the notice must necessarily be made, because such was the statute as interpreted by the court at the time of the passage of the act; hence the act, in referring to the publication to be made once a week for four weeks, means a calendar week, and if notice shall be made on any day of a calendar week, that shall be counted as a publication for that week," etc. That the act of 1891 intended that the notice in any one calendar week should be a notice for the week is undoubtedly true, but this was not all that that act required. The notice must be at some time in the week, and there must be four calendar weeks in each of which there is a publication of the notice of sale preceding the day of sale. The act declares in terms that there must be "one insertion each week for each of the four weeks immediately preceding" the day when the sale is to take place. The week in which the sale takes place is certainly not a week "preceding" the day on which the sale takes place; and it would therefore follow that the notice published in such week

could not be counted as one of the four insertions necessary to a compliance with the statute. Under this construction of the law a period of at least twenty-four days must elapse between the date of the first insertion and the date of the sale. If the first insertion is on Saturday and the subsequent insertions on any given day of the three following weeks, the period of twenty-four days elapses between the two. To illustrate: If a sale was to take place on Tuesday, February 6, the first notice would have to be inserted on Saturday, January 13. Insertions January 13, 20, 27, and February 3 would be a compliance with the law. If an insertion on a day embraced within the week of sale was allowable, a sale could be had after the lapse of seventeen days from the first insertion. For instance, if a sale was to take place on February 6, insertions could be made on January 20, 27, February 3 and 5. Such is not our understanding of the law. It appears in *Bird* v. *Burgsteiner*, supra, that twenty-six days elapsed between the first insertion and the date of sale, and that there were four calendar weeks preceding the day of sale, in each of which notice of the sale had been published. The question now under consideration was not involved at all in that case, and any language in the opinion which conflicts with what we now rule is, therefore, not binding as authority.

2. If what has been said is a correct construction of the act of 1891, it follows that the sale at which Redwine was the purchaser was not properly advertised, for the reason that there were not four insertions in four consecutive weeks immediately preceding the week in which the sale took place. The next question to be considered is, whether or not this defect was such as to render the sale void, or simply an irregularity which would not affect the title of the purchaser, who had no actual notice of the same. In the case of *Sullivan* v. *Hernden*, 11 *Ga.* 294, it was held, that if the sheriff has authority to sell property, a failure in the performance of any duty, for which he would be compelled to indemnify the owner for the injury received, would not destroy the title of an innocent purchaser. In *Brooks* v. *Rooney*, 11 *Ga.* 423, it was ruled, that the purchaser at a sheriff's sale depends upon the "judgment, the levy, and the deed; all other questions are between parties to the

judgment and the officer;" it being sufficient for the purchaser that the sheriff had obtained authority to sell and had executed to him a title. It was further ruled in that case, that an act which made it the duty of the sheriff to advertise the sale of property in a particular way, and to sell between certain hours of the day, was merely directory to the officer; the effect of his neglect being to subject him to a suit for damages at the instance of the party injured, but not to affect the title of the purchaser, unless there was collusion between him and the sheriff. Also, that a purchaser at a sheriff's sale has a right to presume that a public officer, known to possess the power to, sell, has taken every previous step required of him by the law under which he sells. To the same effect are the following: *Hendrick* v. *Davis,* 27 *Ga.* 167; *Johnson* v. *Reese,* 28 *Ga.* 353. See also, in this connection, *Johnson* v. *Reese,* 31 *Ga.* 601; *Solomon* v. *Peters,* 37 *Ga.* 251; *Wallace* v. *Trustees,* 52 *Ga.* 167; *Jeffries* v. *Bartlett,* 75 *Ga.* 230; Maddox *v.* Sullivan, 2 Rich. Eq. 4, s. c. 44 Am. D. 234; Burton *v.* Spiers, 92 N. C. 503; Frink *v.* Roe, 70 Cal. 296; Ware *v.* Bradford, 2 Ala. (N. S.) 676; 12 Am. & Eng. Enc. L. (1st ed.) 210 (note 6). Mr. Freeman in his work on Executions says: "Concerning execution sales, on the other hand, and in the absence of any statute establishing a rule upon the subject, there are some *dicta* and a few decisions indicating that the existence of a notice of sale is essential to its validity. But a very decided preponderance of the authorities maintains this proposition: that the statutes requiring notice of the sale to be given are directory merely, and that the failure to give such notice can not avoid the sale against any purchaser not himself in fault." 2 Freeman, Executions, 953, § 286. The rule is thus stated in the Civil Code: "The purchaser at judicial sales is not bound to look to the appropriation of the proceeds of the sale, nor to the returns made by the officer, nor is he required to see that the officer has complied fully with all those regulations prescribed in such cases. All such irregularities create questions and liabilities between the officer and parties interested in the sale. The innocent purchaser is bound only to see that the officer has competent authority to sell, and that he is apparently proceeding to sell under the prescribed forms."

Civil Code, § 5455. It is therefore the settled law of this State, that a defect in the advertisement is a mere irregularity and does not affect the validity of a sheriff's sale made to an innocent purchaser. This does not conflict with the ruling made in the case of *Williams* v. *Barlow*, 49 *Ga.* 530. In that case the property was advertised for the December sales, and was not sold until the first Tuesday in January. No other inference can be drawn from the language of Chief Justice Warner in that case than that the purchaser knew at the time of the sale that the property had not been advertised according to law. Neither is the case of *Ansley* v. *Wilson*, 50 *Ga.* 418, in conflict with the present ruling, for the reason that that was a municipal tax sale and the requirements of the charter had not been complied with. The same is true of the case of *Sawyer* v. *Cargile*, 72 *Ga.* 290. But even conceding, for the sake of the argument, that the three case just cited are in conflict with those cited above, the earlier decisions, never having been brought under review and expressly overruled, are controlling notwithstanding the subsequent contradictory rulings.

The next question to be considered is, whether the plaintiff in execution can, when he has no actual notice of the irregularity, be said to occupy the position of an innocent purchaser. This question is answered by the ruling made in the case of *Humphrey* v. *McGill*, 59 *Ga.* 649, where it was ruled: "Where a plaintiff in fi. fa. purchases at the sale of property under his execution, he stands upon the same footing as any other purchaser, in respect to irregularities of the sheriff in levying, advertising, and selling. If he purchases without notice of these irregularities, he acquires a good title." Rulings to the same effect were made by the Supreme Court of New York and the Court of Appeals of that State. Wood *v.* Moorhouse, 1 Lans. 405, 45 N. Y. 368. The sale in the present case was not void, therefore, whether we treat Redwine as purchasing in his individual capacity or as agent for Arnold and Buck; there being no evidence in the record that this irregularity was known to Arnold, Buck, Redwine, or Curran, the agent of Redwine who made the bid. The case of *Forbes* v. *Hall*, 102 *Ga.* 47, is not in conflict with this ruling. While the purchaser there was the

attorney for the plaintiff in execution, the sale was not declared void on account of any irregularity, but for the reason that the levy was excessive and therefore void. Such a levy is no authority to sell, and therefore it is immaterial who is the purchaser; he gets no title.

3. The sale under the execution of D. P. Hill was void for the reason that the execution was dormant; and counsel for Mrs. Conley contended in the court below, as well as in this court, that as the sale was made under the forms of law, it was, although void, such an obstacle to another sale that it should be set aside by a direct proceeding before another sale could be had. This contention can not be maintained. A void sale is no sale, and can never be an obstacle in the way of a legal sale. The plaintiffs in execution in the second sale had no connection with the void sale, and did not bring it about for the purpose of deterring bidders and affecting the price of the property at their sale; and hence under no view of the case did it present any obstacle to the consummation of that sale. See *Davis* v. *Comer*, 108 *Ga.* 117.

4. Complaint is made that the judge erred in giving to the jury in his charge a history of the litigation prior to the present trial, between Thornton, Buck, and Maher on the one side and John L. Conley on the other. It appears from a note by the judge to the ground of the motion containing this assignment of error, that this history was derived from the pleadings in the case and from uncontradicted evidence, and that he referred to the same only so far as it was necessary to enable the jury to understand the issues involved in the present case. In the light of the judge's note, it can not be said that the charge complained of in any way prejudiced the rights of the defendants.

5. The land levied upon was in one body made up of contiguous parcels composed of fractional parts of different land lots. We do not think that the fact that the tract was divided by the lines of the land lots would interfere with the right of the sheriff to levy upon the property as a whole and treat the same as one entire tract. Especially would this be true in the present case, where the jury were authorized from the evidence before them to find that the owner had treated the property as one tract so far as the land lot lines were concerned.

6. Mrs. Conley was interested in the sale because under the deed from her husband she was the owner of the property as to every one else except the owner of the Thornton execution, and therefore she was interested in whatever surplus there might arise from the proceeds of the sale after the payment of that execution. At the sale under the execution of D. P. Hill, executor, against John L. Conley, the property had been bid off by Manning for Mrs. Conley. It is true that Manning testified that he was not the agent of Mrs. Conley but was representing John L. Conley, at whose request he bid it off for Mrs. Conley. When the sale under the Thornton execution took place Manning made a statement, as he said, at the request of John L. Conley, in reference to a homestead which had been applied for in the property and to an illegality which was pending; such statement being calculated to deter persons from bidding at the sale. Mrs. Conley admits in her answer that the statement above referred to was made by her authority. These facts having appeared, the judge charged the jury as follows: "If you should believe from the evidence that this property did not bring its full value at the sale under the execution controlled by Buck, still if you believe that the inadequate price was brought about by the conduct of Mrs. Conley, or her agent or attorney, or the defendant John L. Conley, in deterring bidders by making announcements or statements, publicly in the hearing of prospective bidders, that the property was covered by a homestead; if in fact there was no homestead, or that an illegality was pending, if such illegality was not pending, or that the levy under the execution controlled by Buck had not been sufficiently advertised, if in fact it had been lawfully advertised, or other like conduct, then I charge you that Mrs. Conley can take no advantage of the fact that the property did not bring its full value." The error assigned on this charge is, that the judge declared that Mrs. Conley was bound by the statements made by John L. Conley, when the evidence showed that he had long before the sale parted with the title.

If John L. Conley was the agent of Mrs. Conley at the time the sale took place (and there was evidence from which the jury might infer that such was the case), of course she would

be bound by what he said; but the complaint is made that the judge leaves the impression upon the minds of the jury that although he was not her agent she would still be bound by what he said. If he was a stranger, of course her rights should not be affected by what he said or did. Yet, as it appears that Manning, who had bid the property in at the first sale for Mrs. Conley, and whose right to do so does not appear up to the present time to have been impeached by her, made the statement above referred to, and as the evidence shows that John L. Conley and Manning were in apparent co-operation with each other, there was evidence from which the jury could have inferred that Manning was the agent or attorney of Mrs. Conley in making the statements at the second sale, and she admits that such statements were made by her authority. This co-operation with John L. Conley in attempting to deter bidders and depress the price of the property would prevent Mrs. Conley from attacking the sale on account of the mere misconduct of Conley, even if he was a stranger only and not her agent in any way. In this view of the matter there was nothing in the charge of the court which was prejudicial to the defendants.

7. From the evidence it appeared that at the sale under the Thornton execution there were only three bids, $1,000 by Redwine, $1,500 by Arnold, and $2,000 by Redwine, at which amount the property was knocked down to Redwine. As it appeared that at the time Redwine was the agent of Buck and Arnold, it is contended that the manner of the bidding was such an irregularity as would be ground for setting aside the sale. It is insisted that the last two bids were for such amounts as to deter other persons from bidding, and were so intended, and that this proceeding, if nothing else, would have been sufficient for the jury to have returned a verdict setting aside the sale. Upon this subject the court charged the jury as follows: " As to what would be a conspiracy to lessen or deter bidding, the court charges that the fact, if it be a fact, that two persons may bid together for land at a sheriff's sale, or upon joint account, or upon a mutual understanding that they will buy together, does not alone constitute such a prevention of bidding as would make the sale void. Persons have a right to bid together at a

sheriff's sale, provided they do no act which is fraudulent or which tends to deter other persons from bidding or to depreciate the sale or price brought at the sale. The fact that property may be purchased by one person for another and that both persons may be present at the sale can not alone invalidate the sale or make it void on that account." This charge is assigned as error, because it is claimed that counsel did not contend that there was any conspiracy to deter bidders, and that the court failed to charge that the bidding in large amounts might be considered by the jury; and if the amount of each bid was such as to deter bidders, this would be a reason for setting aside the sale. In a note to the ground of the motion for a new trial in which this assignment of error is contained the judge says: "It was contended that the conduct of Arnold, Redwine, or Curran at the sale, and their bidding and acting as the evidence showed, was a ground for setting aside the sale, whether counsel used the word conspiracy or not. It could not have been submitted to the jury merely whether it was strange. There was no request to charge on this subject." There was no error in the charge as given, nor was there any error in the failure to charge as complained of by the defendant. Let it be conceded that the conduct of Arnold and Redwine was such as to deter bidders desiring to purchase the property which was to be sold, such conduct would not be a sufficient ground for setting aside the sale, unless it was shown that there was at the sale a person or persons who would have, but for this conduct, become bidders for the property, and that by reason of this arrangement they were actually deterred from participating in the bidding. As the evidence does not disclose that any one was actually deterred from bidding in the present case, the conduct of Arnold and Redwine, no matter what their intention may have been, did not prejudice the rights of Mrs. Conley.

8. Complaint is made that the court erred in requiring counsel for defendant to refrain from making certain remarks of a pathetic nature in reference to the widow of John L. Conley, who was present in court, it being claimed that such remarks were not inappropriate as a reply to the vigorous assault which had been made on the life and character of Conley by opposite

counsel. We can not say that in the remarks objected to counsel exceeded the bounds of legitimate pathos, but, as all matters of oratory are necessarily left to the sound discretion of the trial judge, we do not feel justified in holding that the conduct of the judge on this occasion was such an abuse of discretion as to require the granting of a new trial.

9. It was contended that because the levy embraced a certain parcel of land which it was admitted was not subject to the execution, the sale was void. We do not see how the defendant in execution, or one claiming under him, can complain of this. The only effect of embracing in the levy and sale more property than the defendant owned would be to increase the proceeds of the sale, and to this extent benefit both the owner of the property which was being sold, and one entitled to the balance of the proceeds of the sale after the execution had been satisfied.

10. It was further contended that the property levied on was embraced within the limits of an incorporated town, that it had been subdivided into streets and town lots, and that for this reason the levy upon the property as a whole was illegal. It appears from the evidence that the owners of the property had caused a map to be made of the same, upon which appeared streets and lots the usual size of town lots; but there was abundant evidence from which the jury could find that the streets and town lots had not been actually laid out over the property, but that the same was really one tract of land, used as such, and the only thing in the nature of a street through it was a recognized public road of the county. The judge's charge fairly submitted these questions to the jury, and the evidence was sufficient to authorize them to find against the contention of the defendant. As there is nothing in the answer of the defendant complaining of the sale on the ground that the same was defective for the reasons referred to in this and the preceding division of this opinion, even if the position taken by the defendant's counsel in this court be correct, it would avail nothing in the present case.

11. One ground upon which the sale to Redwine was attacked was an insufficient description of the property in the levy. The levy described the property as being in the 14th district of

Fulton county, Georgia, and being parts of land lots 163 and 164, being north half of land lot 163, containing 101 1/4 acres, and being the southeast quarter of land lot 164, containing 52 acres more or less, the same being the property described in the deed dated August 16, 1884, from John L. Conley to his wife, and being described also in the petition of A. E. Buck against John L. Conley and wife, heretofore described, suit 1806, fall term, 1894, Fulton superior court, and being the property found subject in said suit. The levy was dated March 15, 1897. It was contended that this levy did not describe the property so that the same could be identified and located, and therefore the public was not put on notice of what property was being sold. It is not claimed that the description of the property in the deed from John L. Conley to his wife or in the petition in the case of Buck v. Conley and wife was not sufficient to identify and locate the property, but it is contended that a levy is not valid which does not in itself, unaided by extrinsic evidence, disclose an accurate description of the property levied on. An entry of levy which embraces in general terms a description of a tract of land levied on and refers for a more accurate description to a public record is sufficient, if the public record accurately describes the property; and this is true notwithstanding the fact that the description might be insufficient to locate the property in the absence of the record. See, in this connection, *Talmage* v. *Interstate B. & L. Ass'n*, 105 *Ga.* 550; *Cedartown Improvement Co.* v. *Cherokee Imp. Co.*, 99 *Ga.* 122; Hoffman v. Anthony, 75 Am. Dec. 701, and note on page 706. The levy in the present case, so far as the description of the property was concerned, was sufficient, and there was no error in so holding.

12. We have given the voluminous record in present case a careful investigation, and the foregoing opinion deals with all of the questions raised which, in our opinion, are of such a character as requires discussion at length. The charge of the court was full, fair, and explicit in every particular; and if any error requiring the granting of a new trial was committed during the entire progress of the case, we have been unable to discover it. The evidence fully authorized the verdict rendered

on all of the contested issues of fact, and there was no error in denying a new trial.

*Judgment affirmed. All the Justices concurring.*