Argued 11 October; decided 29 October, 1900.

## ALTONA v. DABNEY.

[62 Pac. 521.]

SERVICE OF PROCESS ON GARNISHEE.

1. A garnishee, being a disinterested stakeholder, cannot with safety to himself waive service of the process by which property in his hands is subjected to garnishment.

WAIVER OF SERVICE OF ALLEGATIONS AND INTERROGATORIES.

2. A garnishee may waive service of the allegations and interrogatories necessary to determine his liability and voluntarily appear as in other cases: *Carter* v. *Koshland*, 12 Or. 492, followed.

From Multnomah : JOHN B. CLELAND, Judge.

Early in January, 1898, Theodore Altona, the plaintiff, commenced a suit in the Circuit Court of Multnomah County against Herman Vetter and A. L. McCully to foreclose a mortgage on real estate. McCully interposed a defense, to sustain which it was deemed necessary to show that he was a *bona fide* purchaser for value of the mortgaged premises ; and the garnishee, P. P. Dabney, testified on the trial that McCully paid him, as agent for Vetter, $1,000 on the purchase price. Plaintiff recovered judgment against Vetter for $2,293.93. The premises were sold under the decree, leaving a balance still due on the judgment of $221.13, and on June 25, 1898, execution was issued for the deficiency. The plaintiff, claiming that Dabney had never in fact paid Vetter the money received from McCully, caused a garnishment process to be served on him June 27. Dabney's certificate being unsatisfactory, the court, on July 2, made an order requiring him to appear on the ninth to be examined on oath concerning it. By this order, which was personally served on the garnishee the day it was made, the plaintiff was required to serve written allegations and interrogatories within three days from the date thereof, and they were placed in the sheriff's hands July 5. He was unable to make

service on that day, and the plaintiff obtained an *ex parte* order extending the time until the seventh. On the sixth the allegations and interrogatories were served upon the attorney for the garnishee, and on the eighth were filed in court, with the answer of the garnishee thereto. The allegations, in addition to setting out the decree against Vetter, the service of the execution upon the garnishee, and the subsequent proceedings therein, as before detailed, aver that on or about the twenty-fourth of December, 1897, Vetter sold and conveyed to McCully about two acres of land in or near Portland; that Dabney, the garnishee, was the agent of both parties in the transaction, and on or about the first of January, 1898, received from McCully, for the use and benefit of Vetter, $1,000, as a part of the purchase price of such land; and that he had never paid the money so received by him, or any part thereof, over to Vetter. In his answer to the allegations and interrogatories, Dabney admits all the facts alleged by the plaintiff, except that he had never paid Vetter the $1,000 received by him from McCully, which he denies. The case was tried upon this issue, without objection as to the regularity of the proceeding, and a decree rendered in favor of the plaintiff. A motion to vacate the decree for want of jurisdiction was subsequently filed and overruled, and the garnishee appeals.

                                        Affirmed.

For appellant there was a brief over the names of *J. Thorburn Ross* and *E. B. Seabrook*, with an oral argument by *Mr. Seabrook*.

For respondent there was a brief over the name of *Davis, Gantenbein & Veazie*, with an oral argument by *Mr. Arthur L. Veazie*.

MR. JUSTICE BEAN, after stating the facts, delivered the opinion of the court.

The motion to vacate the decree was properly overruled. It is based upon the fact that the allegations and interrogatories were neither served within the time fixed by the court in the order for the examination of the garnishee, nor upon him personally; but his subsequent appearance by answer was a waiver of any irregularity in that regard. The allegations in a garnishee proceeding are essential to jurisdiction of the subject-matter: *Case* v. *Noyes*, 16 Or. 329 (19 Pac. 104), 16 Or. 539 (21 Pac. 46); *Smith* v. *Conrad*, 23 Or. 206 (31 Pac. 398). But jurisdiction of the person may be acquired by a voluntary appearance: *Carter* v. *Koshland*, 12 Or. 492 (8 Pac 556).

1. A garnishee stands in the position of a disinterested stakeholder, and therefore, according to the great weight of authority, cannot waive service of the process by which the property in his hands, or the debt due from him to the principal debtor, is garnisheed: Wade, Attach. § 336 ; Drake, Attach. (6 ed.) § 451b ; Rood, Garnish. § 286 ; *Raymond* v. *Rockland Co.* 40 Conn. 401 ; *Hebel* v. *Amazon Ins. Co.* 33 Mich. 400 ; *Nelson* v. *Sanborn*, 64 N. H. 310 (9 Atl. 721).

2. Proceedings subsequent to the garnishment, however, instituted for the purpose of ascertaining the truth or falsity of the garnishee's certificate, are personal to himself, and there is no reason why he may not waive the service thereof by a voluntary appearance, as in other actions or proceedings against him. It was so held by this court in *Carter* v. *Koshland*, 12 Or. 492 (8 Pac. 556).

The only contested question of fact in the case is whether Dabney paid the money received from McCully to Vetter before the service of the garnishment process upon him. He admits and alleges in his answer to the

allegations and interrogatories that McCully purchased the land of Vetter, and paid to him (the garnishee) $1,000 on the purchase price thereof for the use and benefit of Vetter. In answer to the written interrogatories he says that, at the time of the payment by McCully, Vetter was in Los Augeles, California, and that he sent the money to him on March 11, 1898, by check of his (Dabney's) employer, the Title Guarantee and Trust Co. of Portland, on Ladd & Tilton, of that city. He was the only witness who testified on the trial concerning the matter, and we quote from his testimony: "Q. The money was sent to Mr. Vetter in what form? A. Sent in the form of a check. Q. Was the check ever cashed by Mr. Vetter? A. I think the same check was returned. Q. The same check was returned? A. Yes. Q. The same check that had been sent to Mr. Vetter by you was returned to you by him? A. The same check was, and sent through me. It was indorsed over to someone else. Q. Indorsed to whom? A. Mr. Burkhardt [the Assistant Secretary of the Title Guarantee and Trust Co., and who had charge and control of checks]. Q. Indorsed by whom? A. Mr. Vetter. * * * Q. Was there any understanding at the time that the $1,000 was paid over that it should be returned? A. Well, there was a personal understanding to that effect. Q. Will you state fully what the understanding was in that regard? A. The understanding was this (I will have to tell you a little more in order to make that clear): That Mr. McCully, as to this particular property, was practically a figurehead, and the suit was brought to foreclose, making him a party, and he [Vetter] was in desperate circumstances. I saw him at that time. He was simply on the verge of suicide. He was a kind of sensational German. He had been trying to sell the place, and couldn't, and he wanted to gain time in the

37 OR.— 22.

suit, and he told me that he had actually executed a deed to me. That was the first thing I knew of it. I told him I didn't want him to do that; that I would get someone else to come if he wanted it. When he told me of this, no actual amount having been paid, I thought there was a chance of standing things off. I knew there was some deed, as I said before; but as to the particulars I was not fully advised. It was done in a hurry, and I wanted to save that man as much time in the suit as I could. It was to enable him to sell his place, and catch up. I wanted Mr. McCully to actually pass a valuable consideration. Knowing that you were to put me on the witness stand, I wanted to testify to the fact; and the $1,000 was paid and returned. That was the purpose of it all. Q. It was the understanding when it was paid that it should be returned? A. Practically that was the understanding. Q. It was not paid until the eleventh of March? A. The money was sent away on the eleventh of March. It came back shortly after. It doesn't take long. Q. I mean the money that was paid by McCully about the eleventh of March. A. I think so. Q. Who furnished you the $1,000? A. The money primarily was furnished by the Title Guarantee Co. I asked them to make an advance there for Mr. McCully for a few days. * * * Q. Was the check signed by the Title Guarantee Co. before sent off? A. I think it was. Q. You are not certain? A. Not quite. I didn't know at the time whether it ought to be signed or not, but I wanted it to be the actual thing, and then I thought, if it was lost in the mail, I thought it was best signed; and then I had Mr. Burkhardt's name put on the back as assignee, so that it could not be cashed by anyone else. * * * Q. Do you know where the check is now? A. I do not know. Q. Have you seen it since it was sent off? A. I saw it when it came back. * * * Q. So that whole trans-

action of the payment of that $1,000 by A. L. McCully, as the consideration of the deed to him, and the payment to Vetter, was just a paper transaction, arranged for the purpose of that suit, was it?   A. Well, practically so.   I knew you people had put me on the witness stand before, and I expected you would do it again.   Q. You fixed it up in the expectation of testifying to these things?   A. Yes.''   This testimony requires no comment.   It speaks for itself.   There is but one conclusion to be drawn from it, viz., that the pretended payment of the money to Vetter was a ''mere paper transaction,'' arranged for the purpose of concocting a defense to the foreclosure suit then pending, and that no payment was actually made, or intended to be made.   Whether any money was in fact received by the garnishee from McCully is not open to consideration on this hearing.   He not only admits, but affirmatively alleges, that he actually received $1,000 from McCully for Vetter's use and benefit, and puts his whole defense to this proceeding upon the single issue as to whether he had paid the money over to Vetter, which he has utterly failed to maintain.   The decree of the court below is affirmed.                              AFFIRMED.

<div align="center">Decided 15 October, 1900.