Argued October 4, affirmed December 27, 1917, rehearing denied February 13, 1918.

# MURPHY v. BJELIK.

(169 Pac. 520; 170 Pac. 723.)

**Quieting Title—Title of Plaintiff—Necessity of Title.**

1. In a suit by one claiming under a sheriff's deed to remove clouds from his title, where defendants pleaded·the judgment under which the sale was made and did not allege that it was a nullity or that the sheriff's sale was void, but, on the contrary, relied thereon claiming that the transaction whereby plaintiff acquired title was a redemption from that judgment, but plaintiff, instead of relying on the pleadings, offered the entire record from the commencement of the action to the execution and delivery of the sheriff's deed, he was not entitled to a decree establishing his title if the sheriff's deed was thereby shown to be void, since, having chosen to offer evidence of his alleged title, he must rely upon the strength of his own title.

**Equity—Pleadings—Admissions—Conclusiveness Against Coparty.**

2. An admission in the answer of one defendant is not conclusive upon other defendants.

**Quieting Title—Evidence—Burden of Proof.**

3. Where, in a suit to remove clouds, plaintiff claims to own the land and each of the defendants claim to have a lien thereon, each party has the burden of proving his claim.

**Garnishment—Right to Judgment on Garnishee's Answer.**

4. Under Section 295 et seq., L. O. L., relating to attachment and garnishment and providing that the garnishee shall furnish a certificate of property belonging to the defendant or the amount of any debt owing to the defendant, that if he refuses to give a certificate, or gives one unsatisfactory to plaintiff, he may be required to appear for examination, that the issues between the plaintiff and the garnishee shall be tried as ordinary issues of fact, that if the garnishee fails to answer the court or judge may compel him to do so or plaintiff may have judgment for want of such answer, and that, if it appears from the answer or is found upon the trial that the garnishee had property of defendants beyond that admitted in the certificate or in any amount if a certificate was refused, judgment may be given against the garnishee for the value thereof in money, a judgment against the garnishee is only authorized when he refuses to answer or when his answer is unsatisfactory to plaintiff, and, where he answers by admitting an indebtedness and plaintiff is satisfied with such answer, a money judgment against the garnishee is a nullity and gives plaintiff no right which he would not have without such judgment.

**Garnishment — Execution — Enforcement — Judgment Against Garnishee.**

5. Under Section 308, L. O. L., providing that if judgment is recovered by plaintiff, and it shall appear that property has been

attached, the court shall order it sold to satisfy plaintiff's demands, and that if execution issue thereon the sheriff shall apply the attached property or the proceeds thereof upon the execution, and Sections 233 and 234, relating to the manner of executing a writ of execution and providing that, in the case of property in the possession of or owing from any garnishee, if it appear from the garnishee's certificate .that he is owing a debt then due, and if such debt is not paid by the garnishee to the sheriff on demand, he shall levy on the property of the garnishee as if the execution was against the garnishee's property, but that if such debt be not then due the sheriff shall sell the same as other property, the sale of a debt which has matured and is due is not contemplated, and an order directing the sheriff to sell a debt due from the garnishee· would be a nullity.

### Attachment—Necessity of Compliance With Statute.

6. Attachment proceedings are statutory, and the substantial requirements of the statute must be complied with.

### Garnishment—Nature of Right Acquired by Plaintiff.

7. Garnishment does not create a lien in favor of plaintiff upon any money in the hands of the garnishee, nor upon any property owned by it, but gives rise to a contingent personal liability to respond to any judgment that may afterward be recovered by plaintiff against the garnishee's creditors.

### Garnishment—Nature of Right Acquired by Plaintiff.

8. When plaintiff, in an action in which a garnishee files an answer satisfactory to plaintiff, secures a judgment, it does not create a lien upon any property of the garnishee, as the only judgment to which he is entitled is a judgment against the defendants in the action.

[As to garnishment as satisfaction of the principal debt, see note in 77 Am. St. Rep. 542.]

### Garnishment — Execution — Enforcement — Judgment Against Garnishee.

9. Under Section 234, L. O. L., providing that, if it appear from the certificate of a garnishee that he is owing a debt to the judgment debtor then due if such debt is not paid to the. sheriff on demand he shall levy on the garnishee's property, a demand on the garnishee for payment is jurisdictional and mandatory, and not merely directory, and a sale without such demand is void, as a levy upon and a sale of property of a garnishee under such circumstances is a pure proceeding *in invitum,* and the requirements of the statute ought to be strictly followed.

### PETITION FOR REHEARING.

### Garnishment—Execution—Levy on Property of Garnishee.

10. Under Section 234, L. O. L., as to execution against property in possession of a garnishee, if it appears from the certificate of the garnished third person that he is owing a matured debt to the judgment debtor in the action, the sheriff who is armed with writ of execution against the property of the judgment debtor, if such debt is not paid on demand, must levy on the property of·the garnished third person as if the execution was against his property.

**Garnishment—Jurisdiction Authorizing Entry of Judgment Against Garnishee.**

11. Though by Section 301, L. O. L., a garnished third person, from the time of service of a copy of the writ and notice, is liable to plaintiff until the attachment be discharged or judgment satisfied, such service of writ and notice does not confer jurisdiction over the person of a garnishee so as to authorize entry of judgment against such garnishee, as the order prescribed in Section 303 must be obtained and served before the court acquires jurisdiction to render judgment against a garnishee who either refuses to give a certificate that he owes a matured debt or gives an unsatisfactory certificate.

**Garnishment—Judgment Against Garnishee.**

12. Section 983, L. O. L., as to the means to be used by the court to execute its powers, does not authorize judgment against a garnishee which has given a certificate of indebtedness, as it applies only where jurisdiction is conferred otherwise on a court or judicial officer, and cannot itself be the source of jurisdiction.

**Garnishment—Levy of Execution on Garnishee's Property—Demand.**

13. If there is no authority for judgment against a garnished person who has given a certificate of indebtedness, the demand on him prescribed by Section 234, L. O. L., is an indispensable prerequisite to satisfaction of an execution against the judgment debtor's property from that of the garnishee.

**Courts—Circuit Courts—Presumption of Jurisdiction.**

14. The Circuit Court being a Superior Court of record, when it produces a judgment relating to a matter within the general scope of its powers, such judgment generally proves itself, and, in the absence of affirmative evidence to the contrary, jurisdiction will usually be presumed.

**Courts—Circuit Court—Jurisdiction.**

15. If in rendering judgment the Circuit Court was not proceeding according to common law, as where exercising special powers not brought into action according to common law, jurisdiction will not be presumed from the fact of judgment, but must be made affirmatively to appear on the face of the record.

**Garnishment—Judgment Against Garnishee.**

16. Where there was no statutory authority for judgment against a garnishee which had given a certificate of indebtedness, the Circuit Court's attempted judgment was a nullity, and in contemplation of law it was no judgment at all.

**Garnishment—Levy and Sale of Garnishee's Property—Void Character.**

17. Where authority to seize the property of a garnishee company under execution against the property of the judgment debtor company could have been brought into existence only by first making demand upon the garnishee company to pay its debt to the judgment debtor company, and where the record does not affirmatively show that such authority was brought into existence, levy and sale of the garnishee company's property were void.

From Multnomah: JOHN P. KAVANAUGH, Judge.

Department 1.    Statement by MR. JUSTICE HARRIS.

Although this proceeding has sometimes been referred to by the litigants as a suit to quiet title, in reality it is more in the nature of a suit to remove cloud from title. The Monarch Lumber Company, an Oregon corporation, owned two tracts of land in Multnomah County, Oregon, one of which will be referred to as Tract A and the other will be designated as Tract B. Two sawmills and an electric power plant are located upon Tract A; and in 1911 this property was probably worth $500,000. Tract B consists of a block of ground which is used as a retail lumber-yard.

The plaintiff Grayson M. P. Murphy claims to own both tracts of land and traces his claim of title to a sheriff's deed executed and delivered to him on the faith of a sale which was made to satisfy an execution issued on a judgment obtained by E. W. Spencer on June 5, 1913. All the answering defendants are judgment creditors of the Monarch Lumber Company of Oregon, and all of their judgments were recovered subsequent to June 5, 1913, the date of the Spencer judgment. The plaintiff is proceeding on the theory that the sheriff's deed extinguished the liens of all judgments subsequent in time to the judgment recovered by Spencer and that consequently the judgments held by the defendants are clouds upon the title of the plaintiff. The answering defendants now take the position that the sheriff's deed was void.

We can gain a better understanding of the litigation if we first narrate some of the prominent transactions which must be kept in mind and then state the substance of the pleadings filed by the several parties. The Monarch Lumber Company of Oregon, un-

der date of September 1, 1911, executed 12 promissory
notes for the aggregate sum of $300,000, each note
being for $25,000 and payable one year after date to
the order of the maker. The Monarch Lumber Com-
pany of Oregon secured these notes by conveying
Tracts A and B by a trust deed to William W. Craw-
ford as trustee. The Assets Realization Company, a
corporation organized under the laws of New Jersey,
acquired the notes and owned them when Spencer and
the defendants recovered their several judgments.
On July 30, 1913, the Monarch Lumber Company of
Oregon, deeded Tract A and on August 4, 1913, it con-
veyed Tract B to a corporation which had been organ-
ized under the laws of Maine and was likewise called
the Monarch Lumber Company, and hence on account
of the two corporations bearing the same name one
will be referred to as the Monarch Lumber Company
of Oregon and the other as the Monarch Lumber Com-
pany of Maine. On September 4, 1913, the Monarch
Lumber Company of Maine deeded both tracts of land
to Ira M. Cobe, who at that time was occupying the
position of vice-president of the Assets Realization
Company. Subsequently about October, 1914, Cobe
resigned as vice-president of the Assets Realization
Company and on January 22, 1915, he deeded Tracts
A and B to the plaintiff Grayson M. P. Murphy, who
had succeeded Cobe as vice-president of the Assets
Realization Company.

On March 20, 1913, E. W. Spencer commenced an
action in the Circuit Court for Multnomah County to
recover $16,750, interest, and attorney's fees from the
Monarch Transportation Company, a corporation, the
David Investment Company, a corporation, and Lester
W. David on a promissory note signed by them. A
writ of attachment was issued to the sheriff and that

officer executed the writ by delivering a copy together with a notice of garnishment to the Monarch Lumber Company of Oregon. The Lumber Company answered the writ and notice by delivering a certificate to the sheriff stating that "there is now due from the Monarch Lumber Company to the Monarch Transportation Company at least $7,250." After a trial Spencer obtained a judgment on June 5, 1913, against the Monarch Transportation Company, the David Investment Company and Lester W. David for $17,251.50, $750 attorney's fees and $783.80 costs and disbursements; and after reciting that certain property owned by the Monarch Transportation Company had been attached and directing that such attached property be sold, the judgment order states that, in addition to attaching the property owned by the Monarch Transportation Company the sheriff also

"attached the Monarch Lumber Company, a corporation duly organized and existing under the laws of the State of Oregon with its principal office and place of business in the county of Multnomah, State of Oregon, by leaving with the Monarch Lumber Company a certified copy of the writ of attachment and notice specifying the property attached, especially attaching any moneys, debts or other property in the possession of said Monarch Lumber Company owing to or belonging to said defendants or either of them and especially a sum of money due from said Monarch Lumber Company to the defendant, Monarch Transportation Company, and that subsequently thereto, to wit, May 31, 1913, the said Monarch Lumber Company made a return to the sheriff of Multnomah County, Oregon, stating that there was due and owing from the said Monarch Lumber Company to the Monarch Transportation Company, defendant, the sum of $7,250.

"It is therefore considered, ordered and adjudged by the court that the plaintiff herein have and recover

against said garnishee, Monarch Lumber Company, a corporation, the sum of $7,250 and that execution issue therefor, that the proceeds of said execution and the proceeds of any execution issued herein be applied first to the payment of the costs, disbursements and attorney's fees herein, subsequently to the payment of the demands of the plaintiff herein, to wit, the sum of $17,251.50 with accruing interest and if there be any property or proceeds remaining after satisfying said execution, the sheriff shall upon demand deliver the same to the defendants, Monarch Transportation Company.''

An execution was issued on the judgment on January 26, 1914, and on that day the sheriff executed the writ by levying on Tracts A and B, without first demanding that the Monarch Lumber Company of Oregon pay the amount which, in answer to the notice of garnishment, it had stated was due the Monarch Transportation Company. The execution recites that Spencer obtained a judgment against the defendants in the action and that he "also recovered judgment against the Monarch Lumber Company" for $7,250, and the sheriff is then directed to levy upon and sell property of the defendants in the action and further that he satisfy the sum of $7,250 out of property owned by the Monarch Lumber Company. Pursuant to notice of sale the sheriff sold Tracts A and B on March 2, 1914, to E. W. Spencer for $7,633.60, and delivered to him a certificate of sale. Subsequently on March 11, 1914, the sale was confirmed.

Under date of January 14, 1915, E. W. Spencer, William W. Crawford as trustee, the Assets Realization Company, Ira M. Cobe and John Getz entered into an escrow agreement by the terms of which an assignment of the Crawford trust deed, the notes held by the Assets Realization Company, a deed from Cobe

to Spencer, and an assignment to John Getz of the sheriff's certificate of sale held by Spencer should be placed in escrow in a designated bank, and if Spencer paid $300,000 to the bank on January 29, 1915, the papers held by the bank should be delivered to Spencer, but if he failed to exercise his "option of purchase" then Getz had the option of paying $4,300 to the bank for Spencer as part of the purchase price for the assignment of the certificate of sale and an additional $4,300 on March 12, 1915, as the final payment for the certificate of sale. Spencer did not exercise his option to purchase; but his certificate of sale was acquired by John Getz who in turn assigned the certificate to the plaintiff. The assignment from Spencer to Getz is dated January 14, 1915, and the assignment transferring the certificate of sale from Getz to Grayson M. P. Murphy bears date January 18, 1915. Spencer was paid the total sum of $8,600 for his certificate of sale. On March 26, 1915, no redemption having been made, the sheriff executed a deed to Grayson M. P. Murphy who at that time held the certificate of sale which had originally been issued to Spencer.

All of the answering defendants secured and still hold unpaid judgments against the Monarch Lumber Company of Oregon. John Bjelik recovered a judgment on June 30, 1913, for $3,084. Brayton & Lawbaugh, Ltd., a corporation, commenced an action to recover money, attached Tract A on August 13, 1913, and secured a judgment on December 8, 1913, for approximately $8,000. A judgment for $803.95 was awarded to Patton on September 5, 1913, and A. C. Springer recovered a judgment for $6,000 on June 9, 1914.

The complaint filed by Murphy alleges that he owns and is in possession of Tract A; that he owns Tract B

and that this tract is not in the possession of any person except the sheriff who only has such possession as is necessary to sell certain lumber which the officer found on the premises and levied upon under an execution issued on a judgment. After averring that the defendants John Bjelik, the Brayton & Lawbaugh, Ltd., a corporation, and A. C. Springer each claims some interest in Tracts A and B the plaintiff alleges that their claims arise out of the respective judgments which they had against the Monarch Lumber Company of Oregon. The complaint also states that W. T. Patton claims some interest in the real property and the plaintiff proceeds to explain that Patton bases his claim upon his judgment against the Monarch Lumber Company of Oregon, the issuance of an execution on that judgment, a sale of Tracts A and B on execution, confirmation of the sale and the execution and delivery of a sheriff's deed to Patton. After alleging that the defendants each claimed some interest in the lands and explaining that their respective claims arose out of their judgments against the Monarch Lumber Company of Oregon the plaintiff alleges that

"each of said judgments was rendered subsequent to a judgment recovered by the consideration of this court by one E. W. Spencer as plaintiff against the Monarch Lumber Company (of Oregon) and that an execution was issued to enforce said judgment and all of said real property was sold under said execution, and the sale thereof was afterward confirmed by this court and a deed of conveyance of said real property"

was delivered by the sheriff and that the interest of each of the defendants was extinguished.

The defendants John Bjelik, Brayton & Lawbaugh, Ltd., and W. T. Patton filed separate answers and

87 Or.—22

cross-complaints; and since these three pleadings are substantially alike a statement of the contents of the Bjelik answer and cross-complaint will likewise be applicable to the other two. The averments of ownership and possession found in the complaint are denied, and then follows an allegation to the effect that Bjelik recovered a judgment against the Monarch Lumber Company of Oregon on June 30, 1913, for $3,084 which was docketed and became a lien upon the real estate owned by the Monarch Lumber Company of Oregon. Continuing, the defendant alleges that when he secured his judgment the Monarch Lumber Company of Oregon was indebted to the Assets Realization Company in the apparent sum of $300,000 which it was unable to pay; that afterwards the Monarch Lumber Company and the Assets Realization Company agreed that the former would convey Tracts A and B to the latter in full payment of the debt; that the agreement was carried out by the Monarch Lumber Company of Oregon deeding the premises to the Monarch Lumber Company of Maine which in turn conveyed the property to Ira M. Cobe to be held in trust for the beneficial use of the Assets Realization Company, and that when Cobe resigned as vice-president of the Assets Realization Company he transferred the lands to his successor the plaintiff. The answer and cross-complaint recites that E. W. Spencer obtained a judgment on June 5, 1913, against the Monarch Lumber Company of Oregon for $7,250; that an execution was issued on the judgment, Tracts A and B were levied upon and sold to Spencer for $7,633.60, and the sale confirmed. Bjelik also avers that after the confirmation of the sale the Assets Realization Company and its trustee Cobe arranged with Spencer to redeem the property from the sale to Spencer and that on April 1, 1914, it was agreed that

the Assets Realization Company would at once pay a portion and, upon the expiration of the period allowed subsequent judgment creditors to redeem, the company would pay the balance of an agreed amount to Spencer for the redemption of the property from his judgment; that the agreement was fulfilled by the payment of the stipulated sums to Spencer who then assigned his certificate of sale.    Bjelik alleges that all the moneys paid to Spencer were furnished by the Assets Realization Company and that John Getz ''was acting solely as the agent of the Assets Realization Company'' and served as a mere conduit for the transfer of the certificate from Spencer to the plaintiff.    The prayer of the cross-complaint in effect asks that the agreement between the Assets Realization Company and Spencer, the transfers of the Spencer Certificate of sale, and the sheriff's deed to Murphy be adjudged to be a redemption of Tracts A and B from the Spencer judgment and that the Bjelik judgment be held to be a subsisting lien upon the real property.

Replying to the cross-complaint the plaintiff alleged that on June 5, 1913, ''E. W. Spencer recovered a judgment against the Monarch Lumber Company (of Oregon)'' for the sum of $7,250; that an execution was issued, Tracts A and B levied upon and sold on execution to Spencer and the sale confirmed; that Spencer assigned his certificate of sale to John Getz for $8,600; that Getz transferred the certificate to the plaintiff who ''became the owner of the said real property and entered into possession of the same, subject, however, to the mortgage or deed of trust in favor of the said William W. Crawford, but discharged of any claim thereon by defendants in this cause or any thereof''; that by virtue of the sheriff's deed to Murphy he ''became and is the owner of said real property''; and that

the sale and sheriff's deed extinguished whatever interest Bjelik or any of the other defendants may have had.

Bjelik filed a rejoinder which, in addition to certain denials, affirmatively alleges that the escrow agreement pleaded by Murphy was made for the purpose of "clouding the true transaction had between the parties"; that the real purpose of the contract

"was to have it appear that said Spencer did not theretofore receive any money upon his said judgment * * and that said agreement was fraudulently conceived and executed for the sole purpose of misleading the subsequent judgment creditors of the Monarch Lumber Company, and to prevent the said judgment lienors redeeming said property from said sale to said Spencer and from discovering or learning that said redemption on the part of said Cobe had taken place."

The rejoinder also contained an averment to the effect that the Assets Realization Company furnished the money paid to Spencer and that Getz was a mere conduit for the Assets Realization Company.

Bjelik's claim that the Assets Realization Company furnished the money paid to Spencer is admitted by the plaintiff, for in his reply to the answer and cross-complaint of Brayton & Lawbaugh, Ltd., he

"admits that the money paid to Spencer was the money of the Assets Realization Company and that the same was advanced to said Getz and admits that said Getz acted as agent only for the Assets Realization Company."

The defendant A. C. Springer also appeared by filing an answer, but his pleading is different from the answers of the other defendants. After admitting the corporate character of one and the official character of another defendant and that certain of the defendants claim some interest in the property, Springer denies

the remainder of the complaint and alleges that his judgment is superior to any claim of the plaintiff.

At the trial counsel for plaintiff stated to the court that the deeds from the Monarch Lumber Company of Oregon to the Monarch Lumber Company of Maine, from the Monarch Lumber Company of Maine to Ira M. Cobe and from Ira M. Cobe to Grayson M. P. Murphy, were not sufficient to pass title to the plaintiff. The trial court decreed that the plaintiff did not have any title to the real property and dismissed his complaint, on the theory that: (1) Murphy did not acquire any title from the deeds executed by the Monarch Lumber Company of Oregon, the Monarch Lumber Company of Maine and Ira M. Cobe; and (2) he did not acquire title through the sheriff's deed because (a) that portion of the judgment order which provided for a judgment against the Monarch Lumber Company of Oregon was void; and (b) the levy and sale of Tracts A and B were void since the sheriff did not demand payment by the Monarch Lumber Company of Oregon before levying upon its property. The plaintiff appealed.                                        AFFIRMED.

For appellants there was a brief over the names of *Messrs. Teal, Minor & Winfree* and *Messrs. Wilson, Neal & Rossman,* with oral arguments by *Mr. Wirt Minor* and *Mr. Oscar A. Neal.*

For respondents, Brayton & Lawbaugh, there was a brief over the names of *Mr. Hugh Montgomery* and *Messrs. Platt & Platt,* with an oral argument by *Mr. Montgomery.*

For respondents, W. T. Patton and John Bjelik, there was a brief with oral arguments by *Mr. J. W. Kaste* and *Mr. Maurice W. Seitz.*

MR. JUSTICE HARRIS delivered the opinion of the court.

The main question for decision, and the one to which counsel have given most of their attention, is whether the sale of Tracts A and B by the sheriff was void. But there is a preliminary question which must be disposed of first; and it is because of this preliminary question that an extended statement of the material facts and of the pleadings has been made. Recurring to the answers filed by Bjelik, Brayton & Lawbaugh, Ltd., and Patton, it will be observed that these defendants in effect allege that the Assets Realization Company became the real owner by reason of the deeds executed by the Monarch Lumber Company of Oregon, the Monarch Lumber Company of Maine, and Ira M. Cobe; that the Assets Realization Company was the real owner of the certificate of sale purchased from Spencer for the reason that the company furnished the money and Getz and Murphy acted as its agents; and that therefore the transfer of the Spencer certificate of sale and the delivery of a sheriff's deed to Murphy operated as a redemption by the real owner, the Assets Realization Company, from the lien of the Spencer judgment and left the subsequent judgments, held by Bjelik, Brayton & Lawbaugh, Ltd., and Patton, standing as subsisting liens. During the trial the plaintiff formally stated to the court that he did not claim title through his deed from Ira M. Cobe. None of the parties contended, at the trial in the Circuit Court, that the judgment against the Monarch Lumber Company of Oregon was a nullity; nor did any of the litigants plead, or argue or even suggest that the sale of Tracts A and B by the sheriff to Spencer was void. The trial court, however, found as a conclusion of law that the

judgment against the Monarch Lumber Company of Oregon as garnishee was void and that the levy upon and the sale of its lands were nullities because made without first demanding payment of the debt by the Monarch Lumber Company of Oregon. The plaintiff expressly disclaimed acquirement of title through the deed from Cobe; and, hence, the only claim of ownership made by him is rested upon the Spencer judgment and the sheriff's sale. Although he does not plead all the details the plaintiff does aver in his complaint and in his several replies that Spencer obtained a judgment against the Monarch Lumber Company of Oregon. The three defendants, Bjelik, Brayton & Lawbaugh, Ltd., and Patton, also affirmatively plead that Spencer obtained a judgment against the Monarch Lumber Company of Oregon. The plaintiff relies upon the Spencer judgment to create and sustain his title and to extinguish the liens of the judgments held by the defendants, while the defendants who pleaded the Spencer judgment did so for the purpose of continuing and preserving the liens of their judgments.

1-3. The plaintiff argues that Bjelik, Brayton & Lawbaugh, Ltd., and Patton, are concluded by their answers and that therefore it must be assumed that Spencer secured a valid judgment against the Monarch Lumber Company of Oregon and that the levy and sale were valid. If there were no parties to this suit except the plaintiff and these three judgment creditors and if there were no pleadings except those filed by the plaintiff and these three defendants and if the record contained no evidence concerning the Spencer judgment, then the plaintiff could successfully argue that these three defendants had admitted that Spencer obtained a valid judgment against the Monarch Lumber Company of Oregon and that Tracts A and B had

been legally sold to Spencer. But the plaintiff did not content himself by relying upon the pleadings. He offered the entire record showing every step taken from the commencement of the action by Spencer to the execution and delivery of the sheriff's deed, and it now affirmatively appears from the evidence offered by plaintiff himself that in the action prosecuted by Spencer the Monarch Lumber Company of Oregon was not a party defendant but was only a garnishee and as such admitted that it owed the Monarch Transportation Company, one of the defendants, the sum of $7,250; and it also appears that the order awarding a judgment to Spencer included a judgment against the garnishee for $7,250; and it is this judgment which the plaintiff and the three defendants in the instant suit refer to in the pleadings as the judgment against the Monarch Lumber Company of Oregon. It further appears from the evidence offered by the plaintiff that the sheriff sold Tracts A and B without first making a demand upon the garnishee to pay the debt which it had admitted was due the Monarch Transportation Company. Furthermore, these three defendants deny that Murphy is the owner or in possession of the premises. And while the pleadings speak of a judgment against the Monarch Lumber Company of Oregon and a levy and sale of the property, neither the plaintiff nor any of the defendants in terms allege that such judgment or levy or sale was valid. Moreover, the answer filed by Springer puts in issue the very facts which the plaintiff contends the other answering defendants have admitted. The admission in the answer of one defendant is not conclusive upon the other defendants: 31 Cyc. 91, 139. On his own theory, Murphy does not own Tracts A and B at all unless he acquired title through the sheriff's deed and if he did so acquire

title he is the absolute owner of the premises, subject only to the trust deed held by Crawford; but if the sheriff's deed is void then it necessarily follows that plaintiff has no title at all. Murphy must prove ownership before he can succeed against Springer; but if in his attempt to prove ownership he shows by his own evidence that the deed upon which he relies is void, he has shown that he has no title at all. It would be a legal impossibility for Murphy to be the absolute owner of the premises and at the same time be utterly without ownership: See *Murray* v. *Murphy,* 39 Miss. 214, and 31 Cyc. 337; *People* v. *Oakland Water Front Co.,* 118 Cal. 234 (50 Pac. 305); *Prichard* v. *Board of Commrs. of Morganton,* 126 N. C. 908 (36 S. E. 353, 78 Am. St. Rep. 679); *Southern Pac. R. Co.* v. *Groeck,* 68 Fed. 609; *Southern Ry. Co.* v. *Covenia,* 100 Ga. 46 (29 S. E. 219, 62 Am. St. Rep. 312, 40 L. R. A. 253); *Louisville etc. Ry. Co.* v. *Palmes,* 109 U. S. 244 (27 L. Ed. 922, 3 Sup. Ct. Rep. 193); *Griffin* v. *Augusta & Knoxville R. Co.,* 72 Ga. 423; *McLane* v. *Paschal,* 8 Tex. Civ. App. 398 (28 S. W. 711). All the defendants are similarly situated and if Murphy has no title whatever against one defendant he has none as against the others. The plaintiff claims to own and each of the defendants claims to have a lien upon the premises and each party has the burden of proving his or its claim: *Durkin* v. *Ward,* 66 Or. 335, 338 (133 Pac. 345). The plaintiff chose to offer evidence of his alleged title. He must rely upon the strength of his own title. If he himself shows that he has no title he cannot ask a court of equity to decree that to be true which his own evidence shows not to be true, even though the answers admit it to be true. If the sale by the sheriff was void then the plaintiff is not entitled to a decree saying that he does have title.

The present theory of the defendants is: (1) That the judgment against the Monarch Lumber Company of Oregon *in the action prosecuted by Spencer was* void for want of jurisdiction; and (2) that the levy and sale were void whether made under an execution on a judgment against the principal defendants or on a judgment against the garnishee, because (a) the judgment did not include an order for the sale of the attached debt, and (b) no demand was made upon the garnishee for the payment of the debt before the levy and sale. The defendants rest their contention upon the language of certain statutes regulating attachment proceedings and for that reason it is necessary to direct attention to such sections of the Code as are applicable here.

The plaintiff ''may have the property of the defendant attached, as security for the satisfaction of any judgment that may be recovered * * '': Section 295, L. O. L. After prescribing the method to be pursued when attaching real property or personal property capable of manual delivery and not in the possession of a third person, Section 300, subdivision 3, L. O. L., provides that ''other personal property shall be attached by leaving a certified copy of the writ, and a notice specifying the property attached, with the person having the possession of the same, or if it be a debt then with the debtor * * .'' From the time that a copy of the writ and notice are served any person mentioned in Section 300, subdivision 3, L. O. L., is, unless he pays the debt to the sheriff,'' liable to the plaintiff for the amount thereof until the attachment be discharged or any judgment recovered by him be satisfied'': Section 301, L. O. L. Whenever the sheriff applies to any person mentioned in Section 300, subdivision 3, such person is required to furnish him with

a certificate designating the property in his possession belonging to the defendant or the amount of any debt owing to the defendant; and if such person refuses to give a certificate, or if the certificate given is "unsatisfactory to the plaintiff, he may be required by the court, or judge thereof, where the action is pending, to appear before him and be examined on oath concerning the same * * ": Section 303, L. O. L.  If the plaintiff fails to recover a judgment the attachment is discharged: Section 309, L. O. L.; but,

"if judgment is recovered by the plaintiff, and it shall appear that property has been attached in the action * * the court shall order and adjudge the property to be sold to satisfy the plaintiff's demands, and if execution issue thereon, the sheriff shall apply the property attached by him or the proceeds thereof, upon the execution * * ": Section 308, L. O. L.

The order provided for in Section 303, shall require the person to appear before the court or judge at a specified time and place, and "in the proceedings thereafter upon such order, such person * * shall be known as the garnishee": Section 314, L. O. L.  After the allowance of the order requiring the garnishee to appear and be examined on oath the plaintiff must serve upon the garnishee written allegations and interrogatories "touching any of the property liable to attachment as the property of the defendant": Section 315, L. O. L.; the garnishee must return the allegations and interrogatories to the court or judge with his written answer: Section 316, L. O. L.; the plaintiff may reply to the answer, "and the issues arising thereon shall be tried as ordinary issues of fact between plaintiff and defendant": Section 319, L. O. L. If, however, the garnishee fails to answer, the court or judge may compel him to do so "or the plaintiff

may, at any time after the entry of judgment against the defendant in the action, have judgment against the garnishee for want of such answer * * '': Section 317, L. O. L. But if the garnishee answers and it appears from the answer or is found upon trial that the garnishee at the time of the service of a copy of the writ and the notice,  .

"had any property of the defendant's liable to attachment as provided in subdivision 3 of section 300, and as to which such garnishee * * is required to give a certificate, * * beyond the amount admitted in the certificate, or in any amount if the certificate was refused, judgment may be given against such garnishee for the value thereof in money. The garnishee may at any time before judgment discharge himself by delivering, paying or transferring the property to the sheriff": Section 320, L. O. L.

It is then provided in Section 321, L. O. L., that:

"Executions may issue upon judgments against a garnishee as upon ordinary judgments between plaintiff and defendant, and costs and disbursements shall be allowed and recovered in like manner * * ."

The Code provides for the issuance of an execution and prescribes the mode to be followed by the sheriff when executing the writ. Section 233, L. O. L., contains six subdivisions which point out the course to be followed when property has been attached as well as when property has not been attached. If the property attached is a debt due the defendant and the amount of the debt has been paid to the sheriff the latter indorses the amount on the execution and pays it to the clerk; if the attached property is in his custody he sells it; if no property has been attached the execution itself is authority for the sheriff to levy on the property of the judgment debtor and the sheriff makes the levy "in like manner and with like effect

as similar property is attached, as provided in Sections 300, 301 and 303," but "until a levy, property shall not be affected by the execution." So far as it is material here Section 234, L. O. L., reads thus:

"In case of property in the possession of or owing from any garnishee mentioned in section 303, the sheriff shall proceed as follows: 1. If it appear from the certificate of the garnishee that he is owing a debt to the judgment debtor, which is then due, if such debt is not paid by such garnishee to the sheriff on demand, he shall levy on the property of the garnishee for the amount thereof, in all respects as if the execution was against the property of the garnishee; but if such debt be not then due, the sheriff shall sell the same according to the certificate, as other property."

It thus appears that provision has been made for the attachment of personal property, whether it be in the possession of the defendant or in the possession of a third person; and, so too, provision has been made for the attachment of debts due or yet to become due the defendant. The framers of the Code appreciated the fact that the third person might deny that he was indebted to the defendant and consequently provision was made for ascertaining the fact "upon trial." One of three situations may follow the notice of garnishment to a third person who is indebted to the defendant: (1) The answer may disclose a debt from the third person to the defendant and that debt may (a) be due, or (b) yet to become due; (2) the answer may be unsatisfactory to the plaintiff; or (3) the third person may refuse to answer. The instant suit presents a situation where the third person, the Monarch Lumber Company of Oregon, answered a notice of garnishment by saying that it was indebted to one of the defendants, the Monarch Transportation Company, in the sum of $7,250 and that the amount was then due,

and such answer was satisfactory to the plaintiff, E. W. Spencer. The first question for decision is whether the Code requires or even permits such a judgment as was rendered against the Monarch Lumber Company of Oregon.

4. Nowhere does the Code speak of a judgment against a third person who has been garnished, except when the third person (a) refuses to answer; or (b) his answer is unsatisfactory to the plaintiff. There is no statute authorizing the court to enter a judgment against a third person if he has answered a notice of garnishment by admitting an indebtedness then due the defendant, and if the plaintiff is satisfied with such answer. In *De Witt* v. *Kelly*, 18 Or. 557, 559 (23 Pac. 666), this court said that:

"The statute does not permit a plaintiff in an attachment suit to take judgment against a garnishee on account of a debt owing by the garnishee to the defendant in the suit, except where the latter refuses to furnish to the sheriff a certificate of the indebtedness, or when the certificate given is unsatisfactory": See, also, *Adamson* v. *Frazier*, 40 Or. 273, 277, 278 (66 Pac. 810, 67 Pac. 300).

The money judgment awarded to Spencer against the Monarch Lumber Company of Oregon was a nullity; and, hence, by such judgment Spencer did not gain any right which he would not have had without such judgment: *Missouri Pac. Ry. Co.* v. *Reid*, 34 Kan. 410 (8 Pac. 846); *Conover* v. *Conover*, 17 N. J. Law, 187; *Secor* v. *Witter*, 39 Ohio St. 218, 231; *Carmer* v. *Evers*, 80 N. C. 55.

5. The defendants contend that the sheriff's sale was void because the judgment, did not include an order adjudging the attached property, the debt, to be sold to satisfy the plaintiff's demands as required by Sec-

tion 308, L. O. L.   If the court had made an order
directing the sheriff to sell the debt due from the
Monarch Lumber Company of Oregon to the Monarch
Transportation Company the order would have been
a nullity.   The statute neither requires nor permits
the sale of a debt which a garnished third person ad-
mits he then owes to a defendant.   If the debt is not
yet due it is ordered sold so that the plaintiff can col-
lect on his judgment without delay; but if the debt has
matured and is due from a third person who satisfac-
torily answers the notice of garnishment then the
plaintiff collects on his judgment against the defend-
ant by causing an execution to issue to the sheriff who
levies on the property of the third person if the debt
is not paid to the sheriff on demand: *Batchellor* v.
*Richardson,* 17 Or. 334, 343, 344 (21 Pac. 392).   Con-
struing Sections 233, 234, and 308, L. O. L., together
it is plain that Section 308 does not contemplate an
order directing the sale of a debt which has matured
and is due; but it is collected for the plaintiff by the
sheriff in the manner pointed out by Section 234: *Whit-
ney* v. *Day,* 86 Or. 268 (168 Pac. 295).

We now come to the crucial question involved in the
appeal.   The sheriff did not demand payment of the
debt due from the Monarch Lumber Company of Ore-
gon before levying upon its property.   The plaintiff
takes the position that the statute is merely directory
and that the failure to make a demand was only an
irregularity which no one except the Monarch Lumber
Company of Oregon could at any time have objected
to, and that even the company could not now complain
of the failure of the sheriff to demand payment of the
debt and thus defeat the sheriff's deed: 17 Cyc. 1114.
The defendants contend that the statute is mandatory
and that a demand is jurisdictional; that a levy with-

out a prior demand of payment is void; and that therefore the defendants can question the sheriff's deed and defeat it by showing a void levy, since the validity of the deed depends upon the validity of the levy: 17 Cyc. 1201; 10 R. C. L. 1334, 1335; *McRae* v. *Daviner*, 8 Or. 63. If the failure to make demand was only an irregularity of which no person could at any time complain except the Monarch Lumber Company of Oregon, then as against these defendants the sheriff's deed passed a fee-simple title to Murphy and extinguished the liens of the subsequent judgments; but if, upon the other hand, the failure to demand payment rendered the levy void then the sheriff's deed did not pass any title to Murphy and the judgments owned by the defendants are subsisting liens upon Tracts A and B.

6–9. Attachment proceedings are statutory. It is generally stated that these statutes must be strictly followed: *Schneider* v. *Sears*, 13 Or. 69, 74 (8 Pac. 841); *Batchellor* v. *Richardson*, 17 Or. 334, 346 (21 Pac. 392); *Spores* v. *Maude*, 81 Or. 11, 15 (158 Pac. 169); *California Trojan Powder Co.* v. *Wadhams & Co.*, 85 Or. 307 (166 Pac. 759); and the substantial requirements of the statute must be complied with: *Case* v. *Noyes*, 16 Or. 329, 333 (19 Pac. 104). In *Batchellor* v. *Richardson*, 17 Or. 334, 341 (21 Pac. 392), this court said:

"It is an inflexible rule of law that title to property cannot be divested out of one person, and invested in another, by proceedings *in invitum*, unless such proceedings are strictly complied with."

The property of the Monarch Lumber Company of Oregon was taken to pay the debt of its creditor. The Monarch Lumber Company of Oregon was not a party to the action prosecuted by Spencer. The notice of garnishment only operated to place the corporation in the position of a stakeholder with a contingent per-

sonal liability to the plaintiff which only ripened when a judgment was obtained against the defendants in the action: *Altona* v. *Dabney,* 37 Or. 334, 336 (62 Pac. 521); *Barr* v. *Warner,* 38 Or. 109, 112 (62 Pac. 899); *Fraley* v. *Hoban,* 69 Or. 180, 186 (133 Pac. 1190, 137 Pac. 751); *Price* v. *The Boot Shop,* 75 Or. 343, 347 (146 Pac. 1088). The garnishment did not create a lien in favor of Spencer upon any money in the hands of the Monarch Lumber Company of Oregon, nor upon any property owned by it, but it gave rise to a contingent personal liability to respond to any judgment that might afterward be recovered by Spencer against his debtor and the Monarch Lumber Company's creditor: *Barr* v. *Warner,* 38 Or. 109, 112 (62 Pac. 899); *Montana Nat. Bank* v. *Merchants' Nat. Bank,* 19 Mont. 586 (49 Pac. 149, 61 Am. St. Rep. 532). When Spencer finally secured a judgment even it did not create a lien upon any property owned by the Monarch Lumber Company because the only judgment that he was entitled to was a judgment against the makers of the note. If the instant case presented a situation where the property of a judgment debtor had been levied upon and sold without first demanding payment as directed by some statute, there would be substantial grounds upon which to base a conclusion that the statute was merely directory and that a failure to observe it was only an irregularity of which the defendants could not complain: *Dow* v. *Smith,* 6 Vt. 519; *Collins* v. *Perkins,* 31 Vt. 624; *Solomon* v. *Peters,* 37 Ga. 251 (92 Am. Dec. 69); *Rock* v. *Haas,* 110 Ill. 528; *Odle* v. *Frost,* 59 Tex. 684; *Hobein* v. *Murphy,* 20 Mo. 447 (64 Am. Dec. 194); *Luther* v. *Clay,* 100 Ga. 236 (28 S. E. 46, 39 L. R. A. 96). But see: *Dutton* v. *Tracy,* 4 Conn. 365. When a person is a party to an action and becomes a judgment debtor the law assumes that he

knows of the judgment and of what follows: *Ayres* v. *Campbell*, 9 Iowa, 213 (74 Am. Dec. 346). But the Monarch Lumber Company was not a party to the action nor was it a judgment debtor. At no time before the issuance of the execution did Spencer acquire a lien upon any property owned by the Monarch Lumber Company of Oregon. At the most Spencer only acquired the right to compel the Monarch Lumber Company of Oregon to pay to him the debt which the lumber company owed to the Monarch Transportation Company and when the statute gave the right it also prescribed the mode for the exercise of the right. A levy upon and sale of property owned by a person in the situation of the Monarch Lumber Company of Oregon is a pure proceeding *in invitum* and the requirements of the statute ought to be strictly followed. The authority of the sheriff is not brought into existence until he first demands payment of the debt. When the Code of Civil Procedure was framed and adopted in 1862 the legislature recognized the difference between the situation occupied by a judgment debtor and that occupied by a third person who owes a matured debt, by permitting a levy upon the property of the former without first demanding payment and by requiring a demand upon the latter before levying upon his property. The answer of a third person who admits a matured indebtedness to the defendant, by analogy, takes the place of an answer by a defendant who admits an indebtedness to the plaintiff, but with this difference: In the latter case the answer authorizes a judgment against the person answering, while in the former instance it does not warrant a judgment. When property of a judgment debtor is levied upon on the faith of an execution the writ and the levy are supported by a judgment, but when property of a third person

is levied upon the levy is not supported by a judgment against that third person. In other words, the demand prescribed by Section 234, L. O. L., performs the duty of a judgment and therefore as against the third person the demand should be held to be just as essential as a judgment is as against the defendant. On the one hand an execution and levy, without a judgment, would be void; and upon the other hand an execution and a levy without a demand are likewise void. The right of levy flows from the statute and the right cannot be said to exist unless the statute which makes it possible to exist has first been complied with. In brief, the demand is jurisdictional; it is mandatory and not merely directory. The sheriff's deed did not pass title to Murphy. While it would have been proper to have made entries in the journal giving an account of the manner in which the sheriff executed the writ of attachment, reciting the answer of the Monarch Lumber Company of Oregon, and, when judgment was rendered against the defendants, directing the sheriff to proceed in accordance with Section 234, L. O. L., nevertheless it was not proper to enter a money judgment against the Monarch Lumber Company of Oregon; nor would it have been proper to have ordered a sale of the attached debt. The decree of the trial court is affirmed.          AFFIRMED. REHEARING DENIED.

MR. CHIEF JUSTICE MCBRIDE, MR. JUSTICE BENSON and MR. JUSTICE BURNETT concur.

Rehearing denied February 13, 1918.

PETITION FOR REHEARING.

(170 Pac. 723.)

*Messrs. Teal, Minor & Winfree* and *Messrs. Wilson, Neàl & Rossman,* for the petition.

*Mr. Hugh Montgomery, Messrs. Platt & Platt, Mr. J. W. Kaste* and *Mr. Maurice W. Seitz, contra.*

Department 1. MR. JUSTICE HARRIS delivered the opinion of the court.

The learning displayed by the attorneys for the appellant in their petition for a rehearing and the earnestness with which they have urged their contentions, the new arguments advanced, the amount involved in the controversy and the importance of the questions litigated, all combine to demand further discussion of what was treated in the original opinion as the crucial question presented by the appeal. It is true that the record does not affirmatively show that the sheriff did not demand payment of the debt due from the Monarch Lumber Company of Oregon before levying upon its property; but it is also true that the record does not affirmatively show that the sheriff did demand payment of the debt. The return made by the sheriff on the writ of execution shows that he complied with every requirement of the statutes, except making a demand upon the Monarch Lumber Company of Oregon for payment of the amount of its debt to one of the judgment debtors, the Monarch Transportation Company. The entire judgment-roll in the action prosecuted by Spencer together with the writ of execution and the sheriff's return, the order confirming the sale, the sheriff's certificate of sale and the as-

signments of it, and the sheriff's deed, were all intro-
duced in evidence by the plaintiff, and an examination
of the record will disclose that not only the return
made upon the writ of execution but also the entire
record is silent upon the subject of whether a demand'
was made upon the Monarch Lumber Company of Ore-
gon for payment of its debt before a levy was made
by the sheriff upon its property, although all the de-
tails of the act of making the levy as well as of the sale
of the property fully appear in the record.   The re-
spondents gave ample notice in their printed brief
that they would insist that the sale was void because
no demand had been made upon the Monarch Lum-
ber Company of Oregon.   It is not now and never has
been contended that a demand was in fact made, al-
though it is now argued by the petitioner that, since
there is no evidence affirmatively showing a failure
to make a demand, the presumption is that the sheriff
performed his duty by demanding payment from the
Monarch Lumber Company of Oregon.   It was not
intended to announce in the original opinion that the
evidence affirmatively disclosed that a demand was not
made and any language which directly or indirectly
suggests that the evidence affirmatively proves a fail-
ure to make a demand, is inapt, because as already
stated the record is merely silent upon the subject.
However, the conclusion reached in the original opin-
ion was predicated upon the theory that the making
of a demand was mandatory and not merely directory,
that it was a jurisdictional prerequisite, and that
unless it affirmatively appeared upon the record that
the sheriff had first demanded that the Monarch Lum-
ber Company of Oregon pay its debt, a levy upon and
sale of the company's property was utterly void.

The appellant insists that the court had authority
to render a judgment against the Monarch Lumber
Company of Oregon. We have again examined the
question from every angle and carefully considered
every argument advanced by the appellant, but we
come to the same conclusion that was reached in the
original opinion. Every section of the Code which
can in any wise be applicable to any phase of the ques-
tion is a component part of the Civil Code which was
adopted in 1862 as framed by the Code commissioners.
The Code was written as an harmonious whole and it
was not the work of persons writing at different times
or at cross-purposes. Examining this Code as an
harmonious whole it will be seen that nowhere has it
in terms conferred authority for rendering a judg-
ment against a garnished third person when the at-
taching plaintiff is satisfied with the third person's
certificate that he owes a matured debt to a defendant
in the action. Not only does the Code fail to confer
the authority in express terms but every implication
to be derived from the language found in it per-
sistently points to a withholding rather than a grant-
ing of the authority. Express provision is made for a
judgment against a garnishee who refuses to give a
certificate or who gives an unsatisfactory certificate,
and the very fact that such authority is expressly
given in these two specified instances is by implication
a withholding of authority to enter a judgment against
a garnished person who satisfactorily certifies that he
owes a matured debt to a defendant in the action.
Provision is not only made for a judgment against a
garnishee who refuses to make a certificate or who
gives an unsatisfactory one, but express provision
is also made for the issuance of an execution upon
that judgment "as upon ordinary judgments between

plaintiff and defendant": Section 321, L. O. L.    There is no provision whatever for an execution against a garnished person who stands in the position of the Monarch Lumber Company of Oregon and hence to reach a matured debt owing from such garnished person, one must look elsewhere to see whether any provision has been made.

10. There are three kinds of executions: "one against the property of the *judgment debtor*," another against his person, and the third for the delivery of specific property or damages for withholding it: Section 214, L. O. L.    The plaintiff in the action can have an execution issued by the clerk "against the property of the judgment debtor" and "it shall contain the name of the court, the names of the parties to the action, and the title thereof; it shall substantially describe the judgment."    The writ of execution is then delivered to the sheriff who executes it in the manner provided by Sections 233 and 234; but it must be borne in mind that the writ with which the sheriff is armed is a writ of execution "against the property of the judgment debtor," in the action.    If it appears from the certificate of the garnished third person that he is owing a matured debt to the judgment debtor in the action, then the sheriff who is armed with this writ of execution "against the property of the judgment debtor," if such debt is not paid on demand, must levy on the property of the garnished third person, in all respects as if the execution was against the property of such third person: Section 234, L. O. L.    The sheriff is not directed to look to a judgment against the third person to discover whether the latter owes a defendant in the action, but the officer is required to look to the certificate.    There is no provision for a writ of execution against the property of a garnished third per-

son who has satisfactorily certified that he owes a matured debt to a defendant in the action but the only provision made by the Code is a writ of execution against the property of the judgment debtor in the action and this writ is executed just as if it were against the property of the garnished third person. The very form of the writ precludes all notion of a judgment against the garnished third person. The fact that provision is expressly made for a judgment against a garnished person who gives an unsatisfactory certificate or refuses to give any certificate and no express provision is made for a judgment against a third person who satisfactorily certifies that he owes a matured debt to a defendant in the action; the fact that express provision is made for the issuance of a writ of execution on an expressly authorized judgment against a garnishee and no other express provision is made for a writ of execution to enforce collection from a garnished person except the general provision for the issuance of a writ of execution against the property of the judgment debtor in an action; the fact that the writ of execution mentioned in Sections 233 and 234, L. O. L., runs against the property of the judgment debtor in the action and must contain the information specified by Section 215, L. O. L.; the fact that there is nowhere any provision for an execution against the property of a third person in the situation of the Monarch Lumber Company of Oregon; and the fact that Section 234, L. O. L., directs the sheriff to look to the certificate of the third person instead of a judgment against such third person to see whether that third person owes the judgment debtor against whose property the writ runs, are facts which, when viewed separately are very persuasive, but when combined and considered together lead with almost ir-

resistible force to the conclusion that the Code does not contemplate the entry of a judgment against a third person in the situation of the Monarch Lumber Company of Oregon.

11. There is yet another circumstance that is highly significant. It is true that by the terms of Section 301, L. O. L., a garnished third person is from the time of the service of a copy of the writ and notice, liable to the plaintiff until the attachment be discharged or the judgment be satisfied, but it is also true that this service of the writ and notice does not confer jurisdiction over the person of a garnishee so as to authorize the entry of a judgment against such garnishee, because the order prescribed in Section 303, L. O. L., must be obtained and served before the court acquires jurisdiction to render a judgment against a garnishee who either refuses to give a certificate or gives an unsatisfactory certificate: *Carter* v. *Koshland*, 12 Or. 492, 497 (8 Pac. 556); *McLaughlin* v. *Aumsville Merc. Co.*, 74 Or. 80, 89 (144 Pac. 1154); *Smith* v. *Conrad*, 23 Or. 206, 212 (31 Pac. 398). To require the service of the order prescribed by Section 303, L. O. L., as a jurisdictional prerequisite is to require ridiculous and wasteful excess, if it can be said that service of a notice of garnishment and a copy of the writ of attachment confers jurisdiction over the person of the garnishee so as to authorize a judgment against him. If service of the writ and notice confers jurisdiction, then service of the order specified by Section 303, L. O. L., would not make more complete what was already complete.

12. The appellant invokes the aid of Section 983, L. O. L., and argues that this section of the Code authorizes a judgment against the Monarch Lumber Company of Oregon. This section only applies where jurisdiction is conferred on a court or judicial officer. The

section cannot itself be the source of jurisdiction, for it is only available to carry jurisdiction into effect after jurisdiction has first been conferred by the Constitution or some statute. There is no statute expressly authorizing a judgment against a person in the position of the Monarch Lumber Company of Oregon and every implication to be derived from the several statutes points to the conclusion that the Code does not contemplate the entry of such a judgment. If a judgment is to be entered, why is there no provision for an execution against the property of the third person? "The course of proceeding," to use the language of Section 983, L. O. L., is "specifically pointed out by this Code," for in the plainest terms it provides for an execution against the property of the judgment debtor in the action, and then, if the debt due from the garnished third person is not paid upon demand, the sheriff can, on the authority of this writ, levy upon the property of that person in all respects as if the execution were against his property. The language of Section 234, L. O. L., is unequivocal; it construes itself.

13. In the original opinion it is said that

"the demand prescribed by Section 234, L. O. L., performs the duty of a judgment, and therefore as against the third person the demand should be held to be just as essential as a judgment is as against the defendant."

We did not decide and do not now determine whether the statute is constitutional, but the quoted language was employed solely for the purpose of emphasizing the necessity of making a demand. If it be suggested by the appellant that to take the property of the Monarch Lumber Company of Oregon without a judgment against it is to take its property without due process of law then, since there is no authority for a judgment, the levy and sale were necessarily void, even though

it be assumed that the levy was preceded by a demand for payment of the debt. But assuming, without deciding, that the procedure affords due process of law, it can readily be seen that, if there is no authority for a judgment against the garnished person, the demand is an indispensable prerequisite.

14–16. The appellant places much reliance upon the order of the Circuit Court confirming the sale. If the statute authorized the entry of a judgment against a person in the position of the Monarch Lumber Company of Oregon and made provision for the issuance of an execution on that judgment, then cases like *Bank of Colfax* v. *Richardson,* 34 Or. 518 (54 Pac. 359, 75 Am. St. Rep. 664), and *Voorhees* v. *Jackson,* 35 U. S. (10 Pet.) 449 (9 L. Ed. 490) might be apropos. The Circuit Court is a superior court of record and it is true that when a judgment of such a court relating to a matter falling within the general scope of its powers is produced, the judgment generally proves itself and in the absence of affirmative evidence to the contrary, jurisdiction will usually be presumed; but, on the other hand, if in rendering the judgment the court was not proceeding according to the course of the common law, as where it was exercising special powers not brought into action according to the course of the common law, jurisdiction will not be presumed, but must be made affirmatively to appear on the face of the record. This doctrine is expressly recognized in *Bank of Colfax* v. *Richardson,* 34 Or. 518 (54 Pac. 359, 75 Am. St. Rep. 664), and has been applied in *Willamette Real Estate Co.* v. *Hendrix,* 28 Or. 485, 494 (42 Pac. 514, 52 Am. St. Rep. 800) ; *Mertens* v. *Northern State Bank,* 68 Or. 273 (135 Pac. 885). As stated by appellant in his petition for a rehearing, ''the statute in regard to garnishment is anomalous.'' In the instant case there

was no authority for a judgment against the Monarch Lumber Company of Oregon and hence the attempted judgment was a nullity and in contemplation of law there was no judgment at all. The only judgment provided for by statute is the judgment against the defendants in the action. The only writ provided for is a writ of execution against the property of the judgment debtor and it is this writ that serves as the sheriff's authority to levy upon the property of the garnished person.

17. The Monarch Transportation Company is at once the judgment debtor of Spencer, and the creditor of the Monarch Lumber Company of Oregon. The Monarch Transportation Company could not, without a judgment against its debtor, the Monarch Lumber Company of Oregon, compel the payment of the debt due from the latter to the former; and yet Section 234, L. O. L., contemplates that Spencer can compel the payment of that debt, even though neither Spencer nor the Monarch Transportation Company has a judgment against the Monarch Lumber Company of Oregon. In other words, the statute enables Spencer to accomplish without a judgment against the Monarch Lumber Company of Oregon what could only be accomplished by the Monarch Transportation Company with a judgment. The authority to seize the property of the Monarch Lumber Company of Oregon could have been brought into existence only by first making a demand upon the Monarch Lumber Company of Oregon to pay its debt, and since the record does not affirmatively show that the authority was brought into existence, the levy and sale were void. While we neither decide nor intimate that the statute is unconstitutional, yet if it is defective or invalid the remedy is with the legis-

lature and not with the courts.   The petition for a rehearing is denied.   REHEARING DENIED.

MR. CHIEF JUSTICE MCBRIDE, MR. JUSTICE BENSON, and MR. JUSTICE BURNETT concur.